Whitney v. State.

EZRA S. WHITNEY V. STATE OF NEBRASKA.

FILED JANUARY 3, 1898.   No. 9250.

1. **Embezzlement:** INFORMATION: ALLEGATION OF OWNERSHIP. The information, with sufficient particularity, avers that Harlan county, in this state, was the owner of the money alleged to have been embezzled by the defendant.

2. **Criminal Law:** EVIDENCE: ORDER OF INTRODUCTION. The order in which testimony shall be introduced rests largely in the discretion of the trial court.

3. **Review:** TRIAL: EVIDENCE. Error cannot be predicated on the admission of testimony, where the fact sought to be established by it is subsequently admitted during the trial upon the record by the parties.

4. ———: ———: RECORD. Error in the proceedings of a trial will not be presumed, but must affirmatively appear from an inspection of the record.

5. **Embezzlement:** EVIDENCE. Under section 124 of the Criminal Code the failure and refusal of a county treasurer to promptly pay to his successor in office any of the public moneys in his hands is *prima facie* evidence of embezzlement.

6. **Secondary Evidence:** FOUNDATION. Secondary evidence of the contents of an instrument is admissible upon proof that it once ex-

isted, and was last seen in the possession of the adverse party, where he under oath on the trial has denied the existence of such instrument.

7. **Statutes: DEPOSITORIES: EMBEZZLEMENT.** The act of the state legislature providing for the deposit of state and county funds in banks (Session Laws 1891, p. 347, ch. 50) did not repeal section 124 of the Criminal Code relating to the embezzlement of public moneys.

8. **Embezzlement: DEPOSIT OF PUBLIC FUNDS.** The mere depositing of county funds in depository banks by a county treasurer in strict compliance with the requirements of section 6, chapter 50, Laws 1891, is not an embezzlement of such funds by the treasurer.

9. **Instructions: REASONABLE DOUBT.** Instructions set out in the opinion defining a reasonable doubt *held* correct.

10. ———: HARMLESS ERROR. A conviction will not be reversed for the giving of an instruction, though erroneous, where the defendant was not prejudiced thereby.

11. **County Treasurers: ACCEPTANCE OF CHECK.** An incoming county treasurer accepting a bank check in payment of public funds due from his predecessor is chargeable with the amount of such payment, where the check is surrendered by the incoming officer to the bank which issued it, the amount deposited therein in open account under the depository law, other deposits of county funds are likewise made therein from time to time, checks against the account drawn by the treasurer aggregating a sum in excess of said first deposit are honored and paid by the depository bank, and said acts have been ratified by the county.

12. **Instructions: REPETITIONS.** It is not error to refuse an instruction where the substance thereof is contained in some paragraph of the charge already given.

13. **Embezzlement: EVIDENCE.** Evidence *held* sufficient to authorize a conviction for the crime of embezzlement.

14. **Criminal Law: ACCOMPLICE: STATE'S EVIDENCE.** The fact that an accomplice turns state's evidence and testifies to such facts as are within his knowledge, under and in pursuance of a promise of immunity from punishment made by the prosecuting officer, without the consent or advice of the court, does not constitute a legal defense to a prosecution against such accomplice.

ERROR to the district court for Harlan county. Tried below before THOMPSON, J. *Affirmed.*

The facts are stated in the opinion.

*John Everson, William O. Woolman,* and *D. S. Hardin,* for plaintiff in error:

The information does not sufficiently describe the owner of the money alleged to have been embezzled. (*State v. Potter,* 28 Ia. 554; *Smith v. State,* 21 Neb. 556; *Ex parte Eads,* 17 Neb. 145; *Grant v. State,* 17 So. Rep. '[Fla.] 225.)

The court erred in making improper remarks concerning evidence. (*Bowman v. State,* 19 Neb. 527; *State v. Tickel,* 13 Nev. 502; *People v. Bonds,* 1 Nev. 33; *Crutchfield v. Richmond & D. R. Co.,* 76 N. Car. 320; *People v. Wood,* 27 N. E. Rep. [N. Y.] 362; *Sharp v. State,* 51 Ark. 147; *State v. Jacob,* 8 S. E. Rep. [S. Car.] 698; *State v. Stowell,* 60 Ia. 535; *State v. Harkin,* 7 Nev. 377.)

The court gave an erroneous instruction containing an improper definition of a reasonable doubt. (*Cowan v. State,* 22 Neb. 520.)

The motion to suspend sentence on the ground that the prosecuting attorney promised accused immunity from punishment upon his giving state's evidence in another prosecution, should have been sustained. (*Camron v. State,* 32 Tex. Crim. Rep. 180; *United States v. Ford,* 99 U. S. 594; *Newton v. State,* 15 Fla. 610; *State v. Graham,* 41 N. J. Law 15.)

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General, contra:*

In failing to assail the information by motion and in pleading not guilty, accused waived the alleged defect in the description of the owner of the money embezzled. (*Korth v. State,* 46 Neb. 631.)

The records of the treasurer's office were properly admissible in evidence as tending to prove facts therein stated, and not as admissions on part of accused. (*Strong v. State,* 75 Ind. 440; *State v. Ring,* 29 Minn. 78; *People v. Flock,* 59 N. W. Rep. [Mich.] 237; *Stanley v. State,* 88 Ala. 154; *Osborn v. State,* 27 N. E. Rep. [Ind.] 345.)

Embezzlement consisting of a continuous series of acts committed at different times, but with a common purpose, may constitute a single offense. (*Bolln v. State*, 51 Neb. 581, and cases cited.)

Presumption that the entire amount was embezzled at the close of the second term: *Heppy v. Johnson*, 73 Cal. 270; *Stoner v. Keith County*, 48 Neb. 279.

The depository law did not repeal section 124 of the Criminal Code relating to embezzlement of public money. (*Korth v. State*, 46 Neb. 631.)

A reasonable doubt was correctly defined in the instructions. (*Willis v. State*, 43 Neb. 102; *Lawhead v. State*, 46 Neb. 607; *Langford v. State*, 32 Neb. 782; *Barney v. State*, 49 Neb. 515; *Polin v. State*, 14 Neb. 540; *Davis v. State*, 51 Neb. 301.)

Accused was properly chargeable with the amount of the check received from his predecessor. (*Bush v. Johnson County*, 48 Neb. 1; *State v. Hill*, 47 Neb. 456.)

NORVAL, J.

Ezra S. Whitney was convicted of embezzlement of public money of Harlan county, while he was the treasurer thereof, and sentenced to a term of two years and six months imprisonment in the penitentiary, and that he also pay a fine in double the sum embezzled. The information alleges that the defendant, "Ezra S. Whitney, was the county treasurer of Harlan county, Nebraska, from the 5th day of January, 1894, to the 9th day of January, 1896, and as such officer was charged with the collection, receipt, safe-keeping, transfer, and disbursement of the public moneys of Harlan county, Nebraska; that the said Ezra S. Whitney, on the 8th day of January, 1896, in said county and state, then and there being, and then and there, as such officer, being charged with the collection, receipt, safe-keeping, transfer, and disbursement of the public money of Harlan county, did then and there unlawfully and feloniously convert to his own use and embezzle a large sum of said

money, to-wit, eleven thousand one hundred and ninety dollars, belonging to Harlan county, which said money had then and there come into the possession and custody of the said Ezra S. Whitney by virtue of said office and the discharge of the duties thereof."

The first point made by the defendant is that the information does not allege the money embezzled belonged to Harlan county, this state, and therefore no crime is charged. This objection is exceedingly hypercritical. Undoubtedly an indictment or information cannot be aided by intendment, nor can omissions be supplied by construction. But every act essential to constitute the crime must be averred. Tested by this rule the crime of embezzlement is charged. Stripped of its legal verbiage, the information plainly alleges that the defendant was the county treasurer of Harlan county, Nebraska, and as such officer was charged with the collection, receipt, safe-keeping, transfer, and disbursement of the public money of such county, and did embezzle and convert to his own use $11,190 of the moneys of said county which he had collected by virtue of his said office. The words "said money," as used in the information, refer to the public funds belonging to the county of Harlan, in this state, which it was alleged it was the duty of the defendant to collect and disburse, and which had theretofore come into his possession and custody by virtue of his said office. It is alleged with sufficient particularity that the money converted and embezzled was owned by Harlan county, Nebraska, and the information, therefore, is not defective in substance.

Error is assigned in the admitting in evidence of Exhibit 2. This paper was on file in the county clerk's office of Harlan county, and purports to be a statement made by the defendant, as county treasurer, showing the receipts and disbursements of the treasurer's office for a specified period, together with the amount of public money in his hands to the credit of the several funds at the close of business on January 8, 1896, the date of

the expiration of the defendant's official term.    The first objection urged against the admission of this document is that no legal foundation for its introduction had been made.    Samuel Roberts, the county clerk of Harlan county, produced the exhibit, and testified that he had frequently seen the defendant write; was familiar with his writing, and that the document objected to was in the handwriting of the accused.    Other or further identifying proof was not required.

Another objection urged against the reception of said exhibit in evidence is that the *corpus delicti* had not been proved, and that the admissions or statements of the defendant cannot be received to establish that the offense charged has been committed.    Whether the rule contended for is applicable in a prosecution for embezzlement where it is sought to introduce the official reports made by the accused in pursuance of law may well be doubted.    But it is unnecessary to decide the question at this time, because the defendant was not in the least prejudiced by the receipt in evidence of Exhibit 2.    The order in which parties shall introduce their proofs rests largely in the discretion of the trial judge. (*Basye v. State*, 45 Neb. 261; *Consaul v. Sheldon*, 35 Neb. 247; *McCleneghan v. Reid*, 34 Neb. 472; *Rema v. State*, 52 Neb. 375.)    The record in this case discloses that shortly after the ruling in question was made, the following stipulation, in open court and before the jury, was entered into:

"For the purposes of this action it is admitted that the records in the office of the county treasurer of Harlan county during the term of office of the defendant, Ezra S. Whitney, as treasurer of said county, commencing on the 5th day of January, 1894, and ending on the 8th day of January, 1896, both days inclusive, show that at close of said term of office the said Ezra S. Whitney, as such treasurer, had on hand and in his charge as such treasurer, the sum of forty-six thousand three hundred seventy-three dollars and thirty-seven cents ($46,-

373.37), and that he has turned over and paid thereon to his successor in office since January 8, 1896, the sum of seventeen thousand six hundred fifty-three dollars and thirty-three cents ($17,653.33), and to the state treasurer the sum of four thousand four hundred twenty-six dollars and twenty-one cents ($4,426.21)."

The foregoing was an admission of record of the very matter sought to be established by Exhibit 2, viz., that the defendant had in his hands, as treasurer, at the close of his term of office, public funds aggregating the sum of $46,373.37; hence no prejudice resulted in allowing the contents of said exhibit to go to the jury. (*Lamb v. State*, 40 Neb. 312; *Rightmire v. Hunteman*, 42 Neb. 119; *McGavock v. City of Omaha*, 40 Neb. 64; *Hickman v. Layne*, 47 Neb. 177.)

The following question was put by the state to D. A. McCulloch, one of the witnesses for the prosecution, and who succeeded the defendant as county treasurer: "Q. Along in June or July, 1895, sometime, did you have a conversation or hear a conversation or statement made by Mr. Whitney in regard to some money that could not be accounted for?" The defendant objected "as incompetent, irrelevant, immaterial, no proper foundation made, the *corpus delicti* in this action not having been proven, or the fact that there is a shortage in the county treasurer's office." The court thereupon made this statement: "The court admits this upon the account that the attorney for the defense in stating his case to the jury admitted that the books showed a shortage." To this language the defense excepted, and the witness answered, "I did." Complaint is made of permitting said question to be asked and answered, and the quoted remarks of the trial judge are assailed. The question propounded was in its nature merely preliminary, and did not seek to elicit any substantive fact bearing upon the guilt or innocence of the accused, and the answer being within the range of the question was not prejudicial to the rights of the defendant. Moreover, the em-

bezzlement of the money of Harlan county was subsequently established by the stipulation or admission already set forth, in connection with other evidence. Whether the remarks of the trial judge were prejudicial is not disclosed. If counsel for the prisoner made the statement imputed to them, then the language of the court was pertinent and proper, otherwise it was prejudicial in its character. To have the point established the defendant should have had the opening statement of his counsel preserved in a bill of exceptions, or at least had set forth therein what remarks, if any, were made by counsel to the jury relating to the shortage of the defendant in his accounts with the county. Error is never presumed, but must affirmatively appear from an inspection of the record, is a familiar doctrine, and is quite applicable here. It is for the person who desires a ruling or any fact preserved by a bill of exceptions to procure one to be settled and allowed.

The witness D. A. McCulloch, over the objection of the defendant, was allowed to state that Mr. Whitney informed him that the books were correct, and that he did not have the money or cash to put up which the books called for. C. A. McCloud, who checked up the books of the defendant, testified substantially to a similar conversation and admission of the defendant. It is urged that these admissions should have been excluded, inasmuch as the *corpus delicti* had not been then established. This seems to have been a frequent objection urged during the progress of the trial of the cause, and, if we understand counsel correctly, it is still insisted that the crime of embezzlement has not been proven in this case. The contention is devoid of merit. Prior to the time the objected testimony was received, it had been stipulated or admitted in open court that the records in the county treasurer's office disclosed that the defendant, when he turned over his office to his successor, was chargeable with $46,373.37; that he paid to his successor $17,653.21, and to the state treasurer $4,426.21.

There was evidence tending to show that no other payments have been made by the defendant; that he had at the close of his term on deposit in the State Bank of Republican City, a county depository, county funds to the amount of $14,153.27. Thus it was in evidence that the accused had not accounted to his successor for all the public funds in his hands, and a *prima facie* case of embezzlement was made out against Whitney. (*Bolln v. State*, 51 Neb. 581.) It was, therefore, competent for the state to prove defendant's voluntary admission as to the fact of there being a shortage.

It is insisted that the court erred in requiring the defendant to answer the following question, propounded by the state on cross-examination: "Now, commencing January 1, 1893, what did you put in the bank?" The criticism is that it called for facts which antedate any time that could be charged in the information, and was barred by the statute of limitations. However well taken may have been the objection to the question, the criticism does not apply to the answer of the defendant to the interrogatory. This prosecution was instituted on June 4, 1896, and the first deposit of money in the bank, which the defendant testified to, was made on June 21, 1893, or less than three years preceding the prosecution.

The defendant was a witness in his own behalf, and on his examination in chief he testified to the depositing at various times county funds in the State Bank of Republican City, which was an approved depository bank with a bond of $25,000, and under the law entitled to have on deposit at any time county moneys not to exceed $12,500; and that he deposited moneys of the county in the bank largely in excess of the lawful limit. On cross-examination the defendant, over objections of his counsel, was asked this question: "Why did you put so much money in this depository?" The defendant answered, "Why, I don't know that I can give any explanation why I put so much there." The question was within

the limit of proper cross-examination, and was compe-
tent as bearing upon the question of intent or motive
which actuated the accused at the time he placed the
funds in the bank.

It is urged that the court erred in allowing James A.
Cline to testify, on rebuttal, to the contents of a certain
deposit slip purporting to be evidence of the deposit of
$6,000 by the defendant in the State Bank of Republican
City. The objection to the ruling of the court is that no
foundation for the introduction of secondary testimony
had been laid. Mr. Cline, as one of the state bank ex-
aminers, examined the affairs of the State Bank of Re-
publican City, and for the purpose of verifying the ac-
count between the said bank and defendant as county
treasurer, in January, 1895, called upon the latter and
asked to see his pass-book. Mr. Cline testified that the
request was complied with, and in the pass-book was
the deposit slip in dispute, that the witness made a copy
thereof, left the original with the defendant, and had
not seen it since. The accused, while on the witness
stand, denied the existence of such a deposit slip and of
all knowledge thereof. This laid sufficient foundation
for the admission of parol proof of the contents of the
paper.

Complaint is made of the giving of the third para-
graph of the court's charge to the jury, which is a copy
of section 124 of the Criminal Code, and under the pro-
visions of which law this prosecution was brought and
conducted. It is argued that said section was repealed
by the legislative enactment entitled "An act to provide
for the depositing of state and county funds in banks."
(Session Laws 1891, ch. 50; Compiled Statutes, ch. 18,
art. 3, secs. 18-23.) The identical point was made and
decided adversely to the contention of the defendant, in
*Korth v. State*, 46 Neb. 631. With the conclusion therein
reached we are content.

It is urged that the giving of the entire section was
prejudicial error, because it makes the commission of

any one of several specific and different acts a crime, while the defendant is charged with the felonious conversion of the funds of Harlan county to his own use, and in no other way. The section defines a single crime, although it specifies various modes in which the offense may be committed. No prejudice could have resulted in repeating this section to the jury, for by the fourteenth paragraph of the charge they were, in plain and unequivocal language, told that unless the prosecution established by the evidence beyond a reasonable doubt that Whitney converted the money of the county to his own use there must be an acquittal. So that, instead of the jury being turned loose in the field of conjecture, as argued by the counsel for the defense, they were confined in their investigation to the identical charge set up in the information. A verdict of guilty could not have been returned, without disregarding the instructions, even had the proofs shown, which they did not, that the money of the county was embezzled in some other mode or manner than that described in the information.

Instruction No. 5 is an exact copy of section 6, chapter 50, Laws 1891, and relates to the deposit of county funds in depository banks. By the fourth instruction the jury were directed, in substance, that the depositing of moneys in a county depository in compliance with the provisions of section 6 of said depository law did not constitute embezzlement. Instead of the accused being prejudiced by the instruction, the direction of the court ought to, and doubtless did, inure to his benefit. It was shown that several thousand dollars of money of Harlan county were deposited from time to time, by the defendant, in certain depository banks in strict compliance with the law. Had it not been for instructions 4 and 5 the jury might have concluded that the defendant was guilty of the embezzlement of the money which he had lawfully placed in the depository banks.

The court gave the following instructions on the subject of a reasonable doubt:

"8. You are instructed that a reasonable doubt is an actual, substantial doubt arising from the evidence or want of evidence in the case.

"9. That by reasonable doubt is not meant that the accused may possibly be innocent of the crime charged against him, but it means some actual doubt having some reason for its basis. A reasonable doubt that entitles to an acquittal is a doubt reasonably arising from all the evidence, or want of evidence, in this case. The proof is deemed to be beyond a reasonable doubt when the evidence is sufficient to impress the reason and understanding of ordinarily prudent men with a conviction on which they would act in the most important concerns or affairs of life."

The foregoing states the law correctly. Instructions, either in the identical language, or in substance the same, have been approved by this court in the following cases: *Polin v. State,* 14 Neb. 540; *Langford v. State,* 32 Neb. 782; *Lawhead v. State,* 46 Neb. 607.

The tenth instruction enunciated that to warrant a conviction the guilt of the accused need not be established by direct evidence, but that the acts constituting the crime might be proven by circumstances and other competent testimony. The criticism made against this instruction is that there is no circumstantial evidence in the case. No witness testified to having seen the defendant embezzle the money or convert it to his own use. But many facts and circumstances are disclosed by the bill of exceptions from which the inference could be very properly drawn that the defendant committed the crime charged in this information. It was therefore not erroneous to instruct the jury on the law of circumstantial evidence.

By the eleventh paragraph of the charge the jury were told that if the defendant, as county treasurer, deposited in a depository bank, subject to check, moneys

in excess of the amount allowed by law, that fact alone would not establish that he was guilty of the crime charged; but the depositing of county funds in the bank in violation of the law might be considered, in connection with all the other evidence adduced, for the purpose of ascertaining whether or not the defendant was guilty of the crime of embezzlement. This instruction was quite favorable to the accused, since it was established beyond dispute that the defendant had deposited in at least one of the depository banks county funds in excess of the statutory amount. The instruction fell far short of authorizing a verdict of guilty, in case the jury found that he had violated the depository law. On the contrary, the triers of fact were expressly cautioned that the mere depositing of public funds in violation of said law would not alone establish that the defendant embezzled the money, but that the fact of such illegal deposit of funds might be considered in arriving at a verdict. If the instruction was bad, it was not an error of which the prisoner had any ground to complain. (*Debney v. State,* 45 Neb. 856.)

In instruction No. 12 the court informed the jury that the presumption was that the defendant deposited the money of the county as required by the depository law, and unless they found beyond a reasonable doubt that he did not so deposit said moneys, "but converted the same to his own use or benefit as alleged," they should find him not guilty. The defendant has no substantial foundation for complaint in the giving of this instruction. It was clearly expressed that the presumption was the defendant had performed his duty as a treasurer. How the jury could have been misled by the failure to use the words "in the information," following the words "as alleged" in the latter part of the paragraph, we fail to comprehend. It was not relegated to the domain of conjecture to ascertain what the court intended, but that the jury, possessing ordinary intelligence, must have readily understood that the court had reference to

the charge of embezzlement set forth in the information.

The eighteenth instruction is excepted to, which is in the language following: "You are instructed that if you find from the evidence that Ezra S. Whitney, as treasurer of Harlan county, received a check from his predecessor for $7,000 on the State Bank of Republican City, and that Mr. Whitney deposited the same in said bank, and it was afterwards credited to Harlan county on open account under the depository law as herein mentioned, and the county of Harlan accepted a credit on its open account for such amount against said bank, this made the bank Harlan county's debtor for such sum, and should be charged the same as if the sum had been received by the treasurer in money instead of a check, and then deposited upon such account in said bank."

In January, 1892, the defendant received from his predecessor, the former treasurer of Harlan county, a check on the State Bank of Republican City for $7,000. in lieu of cash, for that amount of county funds; this bank was shortly thereafter designated as a county depository, and on January 11, 1892, the defendant surrendered said check to the bank and received credit as treasurer for the amount thereof, on open account. Other county funds were deposited in said depository bank from time to time by this defendant, and which sums were credited in like manner in the same accounts. Checks were also drawn by the defendant against the account aggregating more than $7,000, which were honored and paid by the said depository bank. At the close of defendant's term as county treasurer he had a balance to his credit in said bank, subject to check, of over $1,500 in excess of the amount which the bank was entitled to receive of county moneys under the depository law. The theory of the defendant was that inasmuch as no money was received from his predecessor in office, but a check, and that the same was deposited the day preceding the approval of the bond of the bank as a de-

pository of county funds, the amount of said $7,000 could not be taken into account. In the light of these contentions and the facts already detailed, the instruction we are now considering was timely and proper. If the contention of the defendant was sound, then the defendant did not have moneys of the county on deposit in the State Bank of Republican City at any one time in a sum in excess of $12,500, the limit allowed by the statute as a depository bank. The amount of the $7,000 check was not only deposited to the credit of the county on the account, but more than said sum was thereafter drawn by the defendant, as county treasurer, from said bank upon his checks against said account. Under the circumstances disclosed by this record the defendant was required to account to the county for said sum of $7,000 to the same extent as though he had received that sum in lawful money from his predecessor instead of by means of a bank check. (*State v. Hill*, 47 Neb. 456; *Bush v. Johnson County*, 48 Neb. 1.) The defendant concedes, under the cases cited, that he was liable on his bond for the amount of said check, but he argues that he is not guilty of the embezzlement thereof. A ready answer to this is that the state makes no claim to the contrary. This prosecution is not based upon the conversion of any portion of the moneys represented by said $7,000 check. The state gives him credit for the amount thereof on the accounting. The prosecution is for the embezzlement of other funds of Harlan county.

Instructions 19 to 24, inclusive, are assigned for error, but we fail to see anything in them which justifies comment, much less reversal.

Objection is made to paragraph 27 of the instructions, which reads: "You are instructed as a matter of law if the money or any part thereof mentioned in the information is shown by the evidence, beyond a reasonable doubt, to have been received by the defendant and by him appropriated to his own use and benefit, or that he, by his acts, deprived the county of Harlan of such money

by the misappropriation of the same in manner and form as alleged, then he is guilty of the crime charged; and unless you do so find you should find him not guilty." Substantially the same criticism is offered upon the foregoing as was urged against the 11th paragraph of the instructions already alluded to, namely, that the omitting from the instructions the words "in the information" after the word "alleged" made the instruction misleading. Stated differently, it permitted the jury to return a verdict of guilty if the accused in any way misappropriated the money, whether it was converted to his own use or not. By the first paragraph of the charge the jury were explicitly advised of the acts which the information alleged the defendant had committed, or the manner of the conversion of the money. So the jury must have understood that the phrase in instruction 27, "in manner and form as alleged," had reference solely to the mode of conversion set forth in the information, and that there could be no conviction unless it was established beyond a reasonable doubt that the prisoner converted to his own use and benefit the moneys of Harlan county; that there should be an acquittal if the county was deprived of the money in any other manner.

The defendant asked a peremptory instruction to return a verdict of not guilty. It was conceded this request was presented upon the theory that section 124 of the Criminal Code had been repealed by the enactment of the depository law. As we have already determined adversely to this contention, the tendered instruction need not be further considered.

The defendant requested this instruction, which was refused:

"7. The jury are instructed that if you find from the evidence that an amount of money in excess of the amount allowed by law to be deposited in the State Bank of Republican City, Nebraska, the public money of Harlan county, was so deposited by the defendant, Ezra S. Whitney, in said bank, and that the board of super-

visors of said county requested additional security to secure the deposit of said sums, and afterwards accepted additional security from said bank or its bondsmen to secure the same, in such case the defendant could not be guilty of embezzling such sums or any part thereof; unless you further find from the evidence, beyond a reasonable doubt, that the said defendant withdrew a part of said moneys and converted the same to his own use."

This instruction lays down a monstrous doctrine. The substance of it all is that if the defendant embezzled the money of the county when he deposited in the bank an amount in excess of the sum authorized by law, he is not liable therefor criminally, in case the county authorities subsequently accepted security for the sum so embezzled. This is not, and never was, the law. The fact that a person who has stolen money afterwards returns the same to the owner, or gives security for its payment, will not relieve him from criminal liability. So if the owner of a stolen horse should follow the thief and recover the horse, or payment of the value of the animal, it would not defeat a criminal prosecution against the thief. The same principle governs the case at bar. (*People v. Royce*, 106 Cal. 175; *Thalheim v. State*, 38 Fla. 169.) The criminal law was not enacted for the purpose of enforcing civil liabilities, as the instruction requested implies. Whether or not Harlan county has been successful in collecting or securing the payment of the money which the defendant is charged with having embezzled is of no consequence in this case. Two instructions requested by the defendant were given, while the others refused were fully covered by the charge of the court. It was not error to decline to repeat those which were rejected. (*Olive v. State*, 11 Neb. 1; *Korth v. State*, 46 Neb. 631.)

Another argument is that the verdict is without sufficient evidence to sustain it. The state established beyond question that the defendant, at the close of his official term, was chargeable with the sum $46,373.82, of which $12,500 was lawfully on deposit in the State Bank

of Republican City, and for which last named sum the defendant is entitled to receive credit. When he turned the office over to his successor he had in his hands, exclusive of said bank deposit, the sum of $33,873.37, which was unaccounted for. The defendant has since paid on account thereof $17,653.33 to his successor in office, and to the state treasurer the further sum of $4,426.21. No other payments have been made by the defendant. The evidence shows that the amount of his shortage still existing is over $11,000, and that he is guilty of embezzlement of more than that amount of the moneys of Harlan county. Instead of there being a total lack of proof to sustain the finding of the jury, the evidence contained in the record is ample to support the verdict.

It is finally insisted that the court below erred in not suspending the sentence. The application in that regard was made after the return of the verdict and before judgment had been entered thereon, being based upon an alleged agreement between the defendant and the prosecuting officer whereby the former, in consideration that he was not to be prosecuted, was to testify on behalf of the prosecution in the case of the State against Benjamin D. Mills, then pending in the district court of Harlan county, for the embezzlement of the same money described in the information herein. The application was supported by affidavits, and resisted by counter-affidavits filed by the state. The counter-showing is sufficient to exonerate the county attorney from having made the agreement alluded to. It is undisputed, however, that some such arrangement was made by the accused with the attorney who was employed by the county as special counsel for the state in the two cases, and that thereafter Whitney, in pursuance thereof, testified on behalf of the state in the prosecution against Mills. In Texas an agreement to turn state's evidence made by the defendant with the prosecuting attorney alone is enforceable if the accused had testified thereunder in good faith. (*Bowden v. State*, 1 Tex. App. 137; *Hardin v. State*, 12 Tex.

App. 186; *Camron v. State*, 32 Tex. Crim. Rep. 180.)   But this rule does not prevail generally elsewhere.   The practice which usually obtains in case of a contract with a prisoner for immunity from prosecution for his offense, entered into with the prosecuting attorney, with the consent of the trial court, is to either enter a *nolle prosequi* or continue the cause to permit the defendant to apply for a pardon.   The decided weight of authority sustains the doctrine that an agreement to turn state's evidence made with the prosecuting officer alone, without the court's advice or consent, affords the defendant no protection in the event he is placed on trial in violation of the agreement. (*United States v. Ford*, 99 U. S. 594; *State v. Graham*, 41 N. J. L. 15; *People v. Peter*, 48 Cal. 250; *State v. Lyon*, 81 N. Car. 600.)   The rule last stated meets our approval.   That the defendant kept his agreement and testified in the case against Mills to such facts as were within his knowledge constitutes no legal defense to this prosecution.   The judgment of conviction is

AFFIRMED.