## PETER LADEAÜX V. STATE OF NEBRASKA.

### FILED JUNE 8, 1905.  No. 14,068.

1. **Larceny is a** felonious taking and carrying away of the personal goods or .chattels of another with intent to deprive the owner of his property therein and to appropriate the same to the use of the taker. Asportation, nonconsent of the owner, and a felonious intent to thereby convert the stolen property to the defendant's own use are necessary elements of larceny.

2. **Evidence examined, and** *held* insufficient to sustain a verdict of guilty of the crime charged in the information against the defendant in the case at bar.

ERROR to the district court for Cherry county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*F. M. Walcott* and *A. M. Morrissey,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson, contra.*

HOLCOMB, C. J.

From a judgment of conviction on a verdict of guilty of the crime of horse stealing, the defendant, an Indian, prosecutes error. He was informed against in the trial court for the larceny, with another, of several head of horses from a large pasture, where they were being grazed. The evidence is purely of a circumstantial nature. It is earnestly urged upon our attention that the evidence is wholly insufficient to support a verdict of guilty as against the defendant in this action. The other party was not tried on the information charging the defendant herein and such third party jointly with the crime. That the evidence would be sufficient to support a verdict as against the other party, had he been tried, is altogether clear. The defendant was prosecuted and convicted on the theory that he was found in the possession of stolen property soon after the commission of the crime, and that such possession was unexplained. A very thorough search of the evidence found in the bill of exceptions fails to disclose a scintilla of evidence showing that the defendant had possession of the stolen property, either actual or constructive, at any time after the commission of the theft, or that he exercised any control, authority or dominion over the stolen property, or made any attempt or effort to do so. There is nothing in the record to justify the inference that he had conspired with the other party to commit the theft, or that they were acting jointly or in concert regarding the control, possession and disposition of the property after the theft had been committed. The most that can possibly be said is that they were together a short time before the offense was committed, at a place where the defendant was well known, and in a neighborhood where he was accustomed to visit, and where his presence was altogether consistent with innocence, and that sometime after the commission of the offense he was again seen in company with the

undoubted offender while the latter was in the possession
and trying to dispose of the horses that had previously
been stolen.  But the evidence shows that the defendant
had been accustomed to visit this place also, and that he
was well known there.  There is some testimony in the
record to the effect that, while some of the horses were
being sold by the other party to certain purchasers then
present, the defendant, being also present, was asked by
the other party what he thought of the deal, and he
answered in substance that he had nothing to do with
it.  It is suggested by counsel for the state that the de-
fendant is protesting too much; that his answer evinces
an undue anxiety to exculpate himself.  In the absence,
however, of any other evidence on which to base an in-
ference of guilt, this answer is equally reconcilable with
the truth of the statement, and may as well have been a
spontaneous expression of one entirely disinterested in
the transaction.  All transactions, so far as disclosed by
the record, respecting the sale of the stolen horses, and
of the control and exercise of dominion over them, were
by the other party, acting alone, and apparently on his
own responsibility.  Unless the stolen property can,
under the evidence, be traced to the possession of the ac-
cused, or to the joint possession of him and the other
party, it is manifest that the evidence is wholly insuffi-
cient to support a verdict as against him.  This, as we
have seen, it fails to do.  Larceny is defined as "a felonious
taking and carrying away of the personal goods or chat-
tels of another with intent to deprive the owner of his
property therein and to appropriate the same to the use
of the taker.  Asportation, nonconsent of the owner, and
a felonious intent to thereby convert the stolen property
to the defendant's own use are necessary elements of lar-
ceny." 2 Cur. Law, 696, and authorities cited.  There is
in the record in the case at bar nothing to show that the
accused did any act showing an intent to either take or
convert to his own use the property alleged to have been
stolen.  This essential element is wholly lacking.  Evi-

dence that he in any way participated in the theft, or in the control or disposition of the stolen property, or that he gained or expected to gain any advantage, or that he endeavored so to do, is wholly lacking from any fact or circumstance that may be found in the record. The verdict, we think, is contrary to the law as laid down by the court in its instructions to the jury, wherein it is said: "To warrant a conviction, such a state of facts and circumstances must be shown that they are all consistent with the guilt of the defendant, and such as cannot upon any reasonable theory or hypothesis be true and the defendant be innocent." Every material fact sought to be established by the evidence may be accepted as a verity, and yet be entirely consistent with the innocence of the accused. Again, the jury were instructed that "before you can find the defendant guilty, you must be satisfied from the evidence, and beyond a reasonable doubt, that he participated in the commission of the offense charged. It is not enough that the defendant was in company of the man who sold the horses at the time such sale was made." Yet, this latter was all that was proved by the evidence as against the accused, except, as heretofore stated, he was in company with the person selling the stolen horses a short time before the crime was committed. Much latitude was allowed the prosecution in proving the guilt of the party with whom the accused is jointly charged with committing the offense, not only of the crime charged in the information, but also of other crimes of a similar nature. The undoubted tendency of the testimony was, in our judgment, to prejudice the accused in the eyes of the jury, and it is possible that he was convicted because he was in bad company, rather than because the evidence in the case at bar established beyond reasonable doubt his guilt of the crime charged in the information and for which he was tried. It is a very serious question whether nonconsent of the owner was proved; but, as the judgment of conviction must be reversed for the reasons stated, it becomes unnecessary to

rule upon the question. The judgment is reversed and the cause remanded.

REVERSED.