WILLIS BRICE V. STATE OF NEBRASKA.
295 N. W. 894

FILED JANUARY 17, 1941.   NO. 30979.

*John T. Marcell* and *Harold P. Caldwell,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE and YEAGER, JJ., and ELDRED, District Judge.

ROSE, J.

In a prosecution by the state of Nebraska in the district court for Douglas county, Willis Brice, defendant, was convicted of manslaughter under an information charging that he unlawfully shot and killed Napoleon Merritt Jackson in Omaha, Douglas county, May 14, 1938. For that felony he was sentenced to serve in the state penitentiary a term of five years. As plaintiff in error he presents for review the record of his conviction.

The sentence is attacked as erroneous and prejudicial on the ground that the original complaint is irregular and defective on its face, showing as it does that the municipal judge before whom it was made signed both the complaint and the jurat. The assignment of error raising this point must be overruled for the following reasons: The complaint charged in direct and specific form that defendant

unlawfully shot and killed Jackson in Douglas county, May 14, 1938. It was effective for the purpose of binding defendant over to the district court for trial. The information in the district court was presented by the county attorney, was in due form and was complete in every particular. Defendant appeared in the district court, pleaded not guilty and went to trial without objecting to the original complaint. He therefore waived the defect of which he complains. *Lewis v. State,* 15 Neb. 89, 17 N. W. 366; *Shaffer v. State,* 123 Neb. 121, 242 N. W. 364.

Defendant also complains of rulings of the trial court in refusing to give a number of instructions requested by him. An examination of the record discloses that the substance of such requested instructions as were proper under the issues, the law and the evidence was given by the trial judge on his own motion. The instructions given do not as a whole contain error prejudicial to defendant. He is therefore not entitled to a reversal on account of the refusing or the giving of instructions. *Samuels v. State,* 101 Neb. 383, 163 N. W. 312; *Foreman v. State,* 126 Neb. 619, 253 N. W. 898.

Insufficiency of the evidence to prove the guilt of defendant beyond a reasonable doubt is urged as a ground for reversing the conviction.

While much of the testimony is conflicting, many of the facts are conclusively shown. A homicidal shot was fired from a revolver during the evening of May 14, 1938, in the Apex Billiard Parlor, a gambling place at 1847 North Twenty-fourth street, Omaha, Nebraska, and Jackson, a bystander therein, was fatally injured by a bullet and died the same evening. Lee Washington was proprietor of the Apex Billiard Parlor and Willis Brice, defendant, was in charge of the gambling. Both were playing poker at a round poker table with Bennie Bates, John Beasley, Percy Holmes and Tom Nelson. Brice came to the poker table with an automatic .45 caliber revolver on his person. Bates and Beasley threatened each other in offensive language where a game of poker was in progress. Addressing Bates, de-

fendant told him to "cut that out." Some one started the shooting. About thirty persons present generally ducked under or behind tables or rushed for the outer door. Jackson remained standing and a bullet passed through his body near the nipple line, taking an upward course and coming out at a point higher than the point of entry. After the shooting ceased the walls of the room and some of the furniture were marred with bullet holes or bullet marks and five or six .45 caliber shells were found near the poker table at which defendant had been seated. The foregoing facts were fully established.

The record contains evidence that defendant gave himself up the same night at the police station, handed his revolver to the inspector of detectives there, said it was the gun he used when he shot Jackson and made a voluntary statement of events that occurred at the poker table.

On the witness-stand, defendant's own version of what occurred at the gambling table may be summarized in part as follows: About 9:30, Bennie Bates came in and tried to get into the game, but he only had $2.50, and defendant told him he could not play because the stakes were $5. Bates sat down at the table, put $2.50 in front of him and tried in vain to catch a hand. Lee Washington lent him $2.50 and he entered the game, played 40 minutes, lost his money, was out of the game and asked defendant for a loan, which was refused. Washington gave him 35 cents, which he also lost and he left the room, but came back in 20 minutes with $1.35, got into the game again, lost the $1.35 and asked defendant for a dime, which was refused. Defendant laughed and was cursed by Bates. Beasley said to Bates: "Come on. Let us get up from the table. We are broke." Bates replied, "You tell me to leave the table and I will come over there." In that event, he was threatened by Beasley with a kick. Defendant told Bates, whose nickname was Tex, to "cut that out" and got from him the warning: No one "can tell me what to do." While defendant was dealing the cards some one yelled: "Look out. He is fixing to shoot." Defendant shouted, "Don't do that,

Tex." Bates at the time had a gun in his hand and it was pointed at defendant. Bates fired twice, one bullet making a flesh wound in one of defendant's legs. Defendant said in his testimony: "After he fired the second time I jumped up on a chair and fired back at him and tried to get across the table, and the table turned over with me." He said the table threw him and his gun kept firing and he fell on the floor, got up after the firing ceased and saw Jackson holding his side and heard him say he was shot.

Testimony of defendant that Bates pointed the revolver at him while firing it is at variance with testimony of some of the other witnesses. Testimony as to relative positions of defendant, Bates, Beasley and Jackson during the exchange of shots was also in conflict. Some of it tends to prove that Jackson was exposed to the danger of a shot from defendant's position at the poker table. The number of .45 caliber empty shells on the floor and the widely scattered bullet marks on walls and furniture and the upward course of a bullet through the body of Jackson are in some degree corroborative of defendant's statements that his revolver kept firing after he started to fall by the overturned poker table and that he shot Jackson.

There is a conflict in the evidence relating to the asserted defense that the life of Brice was in known imminent danger and that he fired his revolver at Bates in self-defense. Defendant admitted he laughed when Bates lost his last dime and his credit at the poker table, and from this and other circumstances there is a legitimate inference that defendant invited the hostility of Bates. It is otherwise shown, however, that the quarrel leading to the homicide was between Bates and Beasley and that the last of the verbal argument between them was just before the shooting, implying settlement with Beasley on the part of Bates by the use of his revolver.

A consideration of the entire record leads to the conclusion that the verdict is sustained by the evidence.

Rulings in admitting and in rejecting evidence are free from error prejudicial to defendant.

AFFIRMED.