LOWELL DAUGHERTY, ALSO KNOWN AS BUD DAUGHERTY, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

48 N. W. 2d 76

Filed June 1, 1951. No. 32954.

*J. E. Willits*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *Dean G. Kratz*, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The defendant, Bud Daugherty, was prosecuted in the district court for Adams County and convicted of grand larceny under an information that charged he unlawfully and feloniously, on or about the 4th day of September 1950, stole and took away two truck tires belonging to and owned by the Home Oil Company, of the value of more than $35, to wit: $224, with intent to convert the same to his own use. He filed a motion for new trial. Upon the overruling thereof, and after being sentenced to a term of 18 months in the State Penitentiary, he brings error proceedings to this court to review the record of his conviction and sentence.

We herein refer to Bud Daugherty as the defendant, and the Home Oil Company as the oil company or station.

The defendant appropriately challenged during the

trial the sufficiency of the evidence to prove his guilt beyond a reasonable doubt.

It appears from the record that the Home Oil Company is engaged in the sale of gas, oil, tires, and the servicing of cars. It is located on the east side of Burlington Avenue outside the city limits of Hastings, facing north, and U. S. Highway No. 6 runs east and west to the north of it. The building is approximately 100 yards long and consists of a filling station, garage, and two offices. In addition to the offices there are four large rooms, one located on the south side of the building and used for storage of grease, oils, other materials, and tires. On the south side of this room tires are stored, separated by a wire fence enclosure with a wire gate. In this enclosure there is one door to the east. There are four entrances to the whole room, two large 12 by 12 doors on the north, one 12 by 12 door on the south, and a small door on the northwest corner of the room leading into the office.

The front end of the building sits approximately 50 feet from U. S. Highway No. 6. South of the building is a vacant space used for storage and parking, about 75 yards wide and 125 yards long. Near the south of the building the ground, at the time in question, was hard and dry. Approximately 50 yards from the building the ground was dry and dusty.

An employee of the oil company who works from 9 p. m. until 7 a. m., as a station attendant, first saw the defendant a few minutes before 9 p. m., on September 4, 1950. The defendant was in the station and remained about 15 minutes. The next time this employee saw the defendant was about 11:25 p. m., the same night. He noticed the doors to the south of the garage were open about 18 inches. They were generally opened all the way, or closed. He walked back to close the doors. Before doing so he glanced out and saw a man wandering around about 50 yards distant. It was dark. He walked to where the man was, put his hand on the man's

shoulder, and flashed a light in his face. It was the defendant. The defendant was rolling a tire, and it dropped in front of him. This employee asked him what he was doing. The defendant replied that he did not know, gave no reason for his being there and having the tire, and made some statement that he lived a short distance away. He had had some drinks but his talk made sense. The employee picked up the tire and rolled it back up between the south doors of the station. The defendant did not protest, and the employee did not take him into custody. This employee next saw the defendant about midnight when he was in a taxicab in front of the oil station. The police took him into custody.

The chief of police, who was acquainted with the defendant, saw him on the morning of the 5th of September in the police station. He asked him for his shoes, which the defendant gave him. The chief of police and the sheriff of Adams County went to the oil station at about 10 or 11 o'clock that morning. Together with the manager of the station and the employee who was on duty the night previous they made a comparison of the foot tracks to the south of the building and the defendant's shoes by placing a shoe in a track. It fit exactly. They also observed a tire track and compared it with the tread on the truck tire that was taken. The track fit the tread exactly. They followed the prints from the shoes and one of the tires from the oil company building to where the tracks terminated near a telephone pole situated on the west side of Burlington Avenue which is in the city limits and where they found the other tire. The oil company retained custody of the tires after they were found.

The evidence in behalf of the defendant is to the effect that he and a friend met the evening of September 4, 1950. The defendant had been drinking beer and whisky since 4 or 5 o'clock. The friend testified that the defendant must have had 20 drinks or more. He drank with him and was with him until about 11 p. m.

They parked near a used-car sales place close to the oil company, and the friend went into the Home Cafe right next door to the oil company. The defendant got into the back seat of the car to sleep. He was sick, and had had too much to drink. When the friend returned from the cafe 40 or 45 minutes later, the defendant was gone. The friend went on to his home but later returned, about midnight, and saw the defendant standing in front of the oil company with a police officer.

About 12:12 a. m., a taxicab company received a call from the defendant to transport him to the oil company. En route he stopped at his mother's drive-in which is the first place east of the oil company, where he stayed 20 to 25 minutes to procure something to eat. When he entered he sat on the ice cream counter, endeavored to talk, and seemed to go from one subject to another. His mother prepared him some sandwiches which he wanted to take along. Employees of the drive-in and the defendant's mother, brother, and sister, testified that the defendant was drunk and that he staggered. The driver of the taxicab testified that the defendant was "practically" drunk, his gait was unsteady, and he staggered a little as he left the taxicab to go to the drive-in. The police officers testified that defendant had been drinking, but in their opinion he was not drunk.

There was competent evidence identifying the two truck tires in question in stock in the oil company's building on September 4 and 5, 1950, as two Riverside, Montgomery Ward de luxe truck tires 11.00-20, of the reasonable market value of $224 or more, and were the only truck tires of that size in stock at this time.

In considering the defendant's assignment of error that the evidence is insufficient to prove the defendant guilty of grand larceny beyond a reasonable doubt, we deem the following authorities pertinent to a determination.

In McIntosh v. State, 105 Neb. 328, 180 N. W. 573, 12 A. L. R. 798, the court defined larceny as an "unlawful

and felonious stealing, taking and carrying away of the personal property of another, of some value, with the felonious intent on the part of the taker to permanently deprive the owner of his property," disapproving Ladeaux v. State, 74 Neb. 19, 103 N. W. 1048, and Cheney v. State, 101 Neb. 461, 163 N. W. 804, insofar as such cases make an essential element of the offense "that the taking must be with a felonious intent to convert the stolen property to the taker's own use." The court said: "Any removal of the property, after the same is under the complete control of the taker, from the spot where found, with the requisite intent of the taker to steal, is a sufficient asportation * * *."

The intent with which the property alleged to be stolen was taken by the accused may be proved by circumstantial evidence. See Phillips v. State, 144 Neb. 772, 14 N. W. 2d 606.

In the case of Gettinger v. State, 13 Neb. 308, 14 N. W. 403, the court said: "To take an article feloniously is accomplished by simply laying hold of, grasping or seizing it animo furandi, with the hands or otherwise. And the very least removal of it from the place where found, by the thief, is an asportation or carrying away."

The evidence shows that one of the stolen tires was found in the defendant's possession and the other was found close by. These tires had been carried away and so done without the consent of the owner. We believe the evidence brings the offense committed by the defendant within the elements constituting the crime of grand larceny.

The defendant contends that by the excessive use of intoxicating liquors he was wholly deprived of reason to the extent that he was unable to formulate in his mind the intent to commit the crime of larceny.

The rule is: Intoxication is no justification or excuse for crime; but evidence of excessive intoxication by which the party is wholly deprived of reason, if the intoxication was not indulged in to commit crime, may

be submitted to the jury for it to consider whether in fact a crime had been committed. See O'Grady v. State, 36 Neb. 320, 54 N. W. 556.

The trial court instructed on intoxication in conformity with the above rule and substantially as requested by the defendant, thereby leaving this defense to the jury to determine whether or not, from the evidence, the defendant was capable of forming an intent to commit the crime.

The defendant predicates error on each instruction given by the court and those requested by the defendant and refused. In his brief he does not discuss error in these instructions except given instructions Nos. 8, 9, and 12, and instructions proffered but refused, Nos. 10 and 13.

The trial court in instruction No. 9 informed the jury: "By the term 'reasonable doubt', as herein used, is not meant a mere caprice, conjecture or possibility. It is an actual, substantial doubt based on a reason arising from either the evidence or want of evidence in the case, and sufficient to cause one to hesitate and refuse to act in the more important affairs and concerns of life."

In Smith v. State, 153 Neb. 308, 44 N. W. 2d 497, the same objection was raised as to the legal propriety for furnishing a definition of a reasonable doubt. This court held such instructions were not prejudicial error. We said: "The instructions in these particulars are in all material respects identical with those quoted and approved in a very recent case in this court. Owens v. State, 152 Neb. 841, 43 N. W. 2d 168."

The defendant complains of instruction No. 8, given by the trial court, as follows: "The defendant in this case is presumed to be innocent of the offense with which he stands charged. This presumption of innocence partakes of the nature of evidence, to the benefit of which the defendant is entitled; it includes that the defendant is presumed to have been of good character, and to have

had nothing to do with the commission of the offense charged in the information in this case. This presumption of innocence attends the defendant throughout the trial, until such time as the defendant may be proved guilty beyond a reasonable doubt, to the satisfaction of each and every juror in the case. This' does not mean beyond the possibility of a doubt, but, as the language of the instruction expresses it, beyond a reasonable doubt."

In Owens v. State, 152 Neb. 841, 43 N. W. 2d 168, an instruction on the presumption of innocence and reasonable doubt was given in substantially the same language as appears in instructions Nos. 8 and 9 in the instant case. The court said, following Davis v. State, 51 Neb. 301, 70 N. W. 984: "When complaint is made of the refusal of the district court to give an instruction asked, the burden is upon the party complaining to show, not only that he was probably prejudiced by the refusal of the court to give the instruction, but he must also show that the entire instruction was correct as a proposition of law and applicable to the facts in evidence in the case."

In Collins v. State, 46 Neb. 37, 64 N. W. 432, an instruction on reasonable doubt was approved by this court, which contains the subject matter as appears in instruction No. 9 given by the court on reasonable doubt, except that such instruction contained the words "groundless" and "an ordinary prudent man" which were not in instruction No. 9 given by the trial court. Likewise, an instruction very similar to instruction No. 9 in the present case was approved in Whitney v. State, 53 Neb. 287, 73 N. W. 696. See, also, Hiller v. State, 116 Neb. 582, 218 N. W. 386, 58 A. L. R. 1322.

We find no prejudicial error in the giving of the instructions complained of.

The defendant complains of the trial court giving instruction No. 12, which contained the following language: "You will be given two forms of verdict and you will use the one upon which the twelve jurors agree

as the right verdict in the case and sign it by your forman (foreman)." The contention is that the quoted language has the effect of coercing the jury into a verdict, while the law provides a jury may report an agreement impossible. The authorities, Meadows v. State, 182 Ala. 51, 62 So. 737, Ann. Cas. 1915D 663, and Gidley v. State, 19 Ala. App. 113, 95 So. 330, cited by the defendant, are wholly inapplicable, and discussion of the cases is not deemed necessary. This assignment of error is without merit.

We have examined the instructions requested by the defendant and refused. The following rule is applicable.

In Brice v. State, 138 Neb. 853, 295 N. W. 894, the court said: "Defendant also complains of rulings of the trial court in refusing to give a number of instructions requested by him. An examination of the record discloses that the substance of such requested instructions as were proper under the issues, the law and the evidence was given by the trial judge on his own motion. The instructions given do not as a whole contain error prejudicial to defendant." See, also, Owens v. State, *supra*.

The defendant has failed to show the given instructions by the trial court to be legally incorrect and of showing any prejudice in the refusal of his requested instructions.

"It is not error to refuse requested instructions when the substance of them is given by the court in its instructions to the jury." Smith v. State, *supra*.

We have discussed the errors complained of by the defendant in his brief and discussed therein. The defendant has assigned many errors which are not considered in his brief or discussed. We deem the following rule applicable: Errors assigned but not discussed will be considered waived and will not be examined by this court. See, Smith v. State, *supra;* Little v. Loup River Public Power District, 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355.

For the reasons stated, we find no merit in the contention of the defendant that there were prejudicial errors in the proceedings which resulted in his conviction and sentence.

The judgment of the district court should be, and is, affirmed.

AFFIRMED.