THE PEOPLE *ex rel.* B. F. ALEXANDER *v.* CHARLES H. SWIFT, PRESIDENT OF THE BOARD OF TRUSTEES OF SACRAMENTO COUNTY.

WATERWORKS FUND OF SACRAMENTO.—The President of the Board of Trustees of the City of Sacramento has no authority to sign a warrant drawn by the Auditor on the Treasurer, payable out of the "Waterworks Fund," for fitting up the Police Court Room, though the room is in the waterworks building.

WARRANTS DRAWN BY AUDITOR OF SACRAMENTO.—If the Auditor of the City of Sacramento, in drawing a warrant on the Treasurer, incorrectly designates the fund out of which the demand should be paid, it is not the duty of the President of the Board of Trustees to sign it.

THIS was an original proceeding commenced in the Supreme Court.

The other facts are stated in the opinion of the Court.

*George R. Moore,* for Relator.

The Auditor has the power, and he is the only officer upon whom such authority is conferred, *to designate the fund out of which a demand shall be paid.* In this, too, he has a discretion which he is bound by his oath and his bond to exercise legally and honestly, and to the best of his knowledge and ability. If in this matter he·fails or neglects to do his duty properly, the injured party has his remedy. It seems to us that no proposition can be clearer than the one under discussion, that in the performance of these duties the Auditor acts entirely independent of the President, and that the President can in no manner control or dictate to him. If the President had the power to veto the acts of the Auditor as well as the Board of Trustees, his authority would be almost unlimited and absolute; but such is not the letter or meaning of the law. When a claim is presented to the Board it is acted upon, and either allowed or rejected; if allowed, it then goes to the Auditor, who also carefully examines it, and either allows or rejects it. If he allows it, he determines the fund out of which it must be paid. This frequently is no easy matter, as often a demand may almost as properly be paid out of one fund as another. But some one must perform this duty, and the law has designated the Auditor.

*Charles H. Swift,* in *pro. per.*

The account could not legally be allowed, as it was based on and referred to an ordinance that was void in law. (Laws 1863, p. 421, Sec. 9; Ib. 1863, p. 426, Sec. 27.) The President cannot sign a warrant drawn on the Waterworks Fund excepting for the purposes described in section twenty-seven, and this claim is not of that character. (Laws 1863, p. 426, Sec. 27.) The President is prohibited signing warrants for accounts approved by the Auditor, unless he finds all the proceedings legal. (Laws 1864, p. 484, Sec. 1.)

Admitting the claim itself to be legal and just, and for " materials furnished in finishing Police Court room," the Auditor committed an error 'in certifying that the same was payable from the Waterworks Fund, and drawing his warrant thereon. The only class of claims payable from said fund being set forth in Laws of 1863, p. 426, Sec. 27.

It is not the duty of the Auditor to *designate* the fund out of which a claim is payable, but to " satisfy himself out of what fund it is payable " according to law.

By the Court, CURREY, J.

The relator has applied for a writ of mandamus to compel the respondent to sign a warrant drawn by the Auditor of the City of Sacramento on the Treasurer of the city, directing him to pay to the relator five hundred and seventy-four dollars and thirty-eight cents out of the money in the Waterworks Fund. The amount for which the warrant was drawn was due the relator on the 2d of January, 1865, for materials furnished and work performed by him in fitting up the Police Court room in the waterworks building in Sacramento, of which he rendered an account to the Trustees, which, on the 9th of January, they examined· and allowed as correct. The account was then examined and approved by the City Auditor, who indorsed on it his approval, and designated the same as payable out of the Waterworks Fund. (Laws 1863, p. 415.)

The warrant thus drawn was presented to the President of the Board of Trustees for his signature. He refused to sign it, and hence this application.

On the 2d of January, 1865, the Trustees passed an ordinance providing that: "The sum of six hundred dollars is hereby appropriated from the Waterworks Fund to pay B. F. Alexander for work done finishing Police Court room in waterworks building."

The respondent justifies his refusal to sign the warrant on two grounds. The first is, that the Board of Trustees had no power to pass the ordinance appropriating the money of the Waterworks Fund for the payment of the demand of the relator; and the second is, that the Auditor had no authority to designate the Waterworks Fund as that from which the warrant should be paid.

The Act to incorporate the City of Sacramento (Laws 1863, p. 415) confers the power in general terms upon the Board of Trustees to make by-laws and ordinances not repugnant to the Constitution of the United States or of the State of California. Then follows a particular enumeration of the powers of the Board of Trustees. Among these is the authority to make contracts in behalf of the city, and to examine and liquidate all accounts against the city. The same Act specifies in detail the duties of the principal officers of the corporation. It is made the duty of the President of the Board of Trustees to sign all warrants drawn upon the City Treasurer; but before he shall sign any warrant, he shall ascertain from the books of the Auditor that there is sufficient money in the proper fund to pay the same. (Laws 1864, p. 484.)

The revenues of the city are derived, under the Act, from various sources, viz: Taxes, licenses, harbor dues, water rents and fines, and these revenues are directed to be apportioned and distributed in a particular manner. The revenues derived from the waterworks it is declared shall be paid into a fund to be known as the "Waterworks Fund," which fund is primarily devoted to the payment of all necessary expenses to carry on and keep in order the waterworks, and it is made the duty of

the Auditor at the end of every three months to apportion the residue of this fund, if there be any after such payment, as other funds of the city are required to be apportioned. . (Act of 1863, p. 426, Sec. 27.)   The twenty-sixth section of the Act provides that the revenues derived from taxes, licenses, harbor dues, net water rents, and fines collected in the Police Court or otherwise, except as provided in section twenty-seven, when paid into the Treasury shall be appropriated and divided as follows : Fifty-five per centum to an Interest and Sinking Fund, which shall be applied to the payment of the annual interest upon the bonds legally issued for city indebtedness, issued under the Act of 1858 ; the excess of said fund, after the payment of said interest, shall be applied to the redemption of said bonds, in such manner as the Board of Trustees may determine; eight per cent to a School Fund, to be applied to the support of schools within the limits of said city ; seven per cent to a Fire Department Fund, and the residue to a fund to be called the General Fund, to be used for all such necessary municipal expenses, including salaries, as not otherwise provided for in this Act.   Then follows a proviso which requires no special notice.

The Waterworks Fund *eo nomine* cannot be apportioned by ordinance nor can it be reached by the designation of the Auditor, except in accordance with section twenty-seven of the Act.   If the relator's demand had been for necessary expenses to carry on and keep in order the waterworks, there could not have existed any objection to the ordinance, nor would the respondent have been justified in withholding his signature from the warrant.   But the work of fitting up the Police Court room, though it was in the waterworks building, did not pertain to carrying on or keeping in order the waterworks, and hence the expenses of such work could not be charged to the Waterworks Fund.   As we have already seen, this fund can be reached directly only for the objects of the waterworks.   Whatever may remain after the necessary expenses mentioned in the Act have been paid, is to be appropriated and distributed to other purposes, that is to say, fifty-

five per cent of this surplus or " net water rents " to an Interest and Sinking Fund; eight per cent to a School Fund; seven per cent to a Fire Department Fund, and the residue—thirty per cent—to the General Fund. These several funds, except the last, are apportioned to particular uses. The holders of the bonds mentioned have an interest in the fifty-five per cent named. Those who have children to educate are particularly concerned in the just application of the eight per cent assigned to the School Fund; and those having property to be preserved from destruction by fire, are interested in the Fire Department Fund. ˙ The Act has appointed the General Fund for the payment of such municipal expenses as are not otherwise provided for.

It is urged on behalf of the relator that it is the province of the Auditor to designate the fund out of which the demand shall be paid. It is undoubtedly his duty to so designate, but at the same time he must designate correctly, otherwise it is not the duty of the President of the Board to sign the warrant. If the Auditor had certified that the relator's demand should be paid out of the Interest and Sinking Fund or out of the Fire Department Fund, would that designation have been binding and conclusive on the President of the Board of Trustees? Is the relator in any better condition because the Waterworks Fund was designated by the Auditor as the source from which the demand should be paid? These questions can only be answered in the negative. The President of the Board of Trustees is the chief officer of the corporation whose duty it is to supervise the conduct and acts of its subordinate officers. It is his duty to sign warrants properly drawn on the City Treasury, provided he shall ascertain from the proper source, before signing any warrant, that there is sufficient money in the proper fund to pay the same. Here is an important condition which must precede rightful action on his part. He must ascertain that there is in the proper fund money enough to pay the amount of the warrant before he signs it. When the warrant in question was presented to him

51

he must be presumed to have known that any money in the Waterworks Fund could not be properly applied to the payment of it, and therefore he was in duty bound to refuse it his signature.

We are of the opinion the respondent was justified in refusing to sign the warrant, for the reasons stated by him in his answer.

The application must be denied, and it is accordingly so ordered.