Korth v. State.

CARL KORTH v. STATE OF NEBRASKA.

FILED JANUARY 9, 1896.    No. 6679.

1. **Affidavits**: BILL OF EXCEPTIONS: REVIEW. Affidavits presented as evidence on a hearing in proceedings in a case in the district court will not be examined in this court unless made a part of the record by being embodied in a bill of exceptions.

2. **Criminal Law**: FAILURE TO TRY ACCUSED: DISCHARGE: REVIEW. When an application for discharge is made by a party charged with the commission of a crime for the reasons stated in section 391, Criminal Code, that three or more terms of court have elapsed since the one at which the information was filed against him, without his being brought to trial, and the delay has not happened on his application, or been occasioned by want of time to try it, the last two stated facts must appear affirmatively in the record by a showing made, if not otherwise. In an examination by this court to determine the propriety of the action of the district court in overruling such application they will not be presumed, but the presumption that the court proceeded regularly and without error will prevail.

3. **Appointment of Prosecuting Attorney**: INFORMATION. The provisions of section 21, chapter 7, Compiled Statutes, as follows: "In the absence, sickness, or disability of the county attorney and his deputies, the court before whom it is his duty to appear, in which there may be business for him, may appoint an attorney to act as county attorney, by an order to be entered upon the minutes of the court, but who shall receive no compensation from the county except as provided for in section six of this act" (Compiled Statutes, sec. 20, ch. 7),—*held*, applicable to the prosecution of offenses by information, established by the act of 1885 (Criminal Code, sec. 579), and to warrant or authorize the trial court to appoint an attorney to perform the duties required of the county attorney in any particular case being prosecuted under the law in regard to prosecutions for offenses by information whenever the conditions exist as stated in section 21, chapter 7, herein quoted, and that the enactment allowing such appointment is not in conflict with the provisions of section 10 of the bill of rights, in the portion wherein it refers to the legislature providing by law for holding persons to answer for criminal offenses on information of a public prosecutor.

4. **Criminal Law:** PLEA IN ABATEMENT: WAIVER. In a criminal case "The accused shall be taken to have waived all defects which may be excepted to by a motion to quash, or a plea in abatement, by demurring to an indictment or pleading in bar, or the general issue" (see Criminal Code, sec. 444), and if a plea to the general issue has been entered and has not, on leave obtained, been withdrawn, a plea in abatement need not be entertained.

5. **Preliminary Examination:** TRANSCRIPT. Where a transcript of the proceedings at the preliminary examination, and the information upon which such examination was had, were lost or mislaid from the files of the district court, an order for the substitution of another transcript of such record and copy of the information was proper and not erroneous.

6. ——: WAIVER. The record of the proceedings in the examining court disclosed that a complaint was filed which contained a charge of the crime for which plaintiff in error was tried in the district court, and that he was arraigned thereupon and waived examination. *Held,* Sufficient to show fulfillment of the requirements of section 585 of the Criminal Code in regard to preliminary examination.

7. **Information:** SEPARATE FELONIES: ELECTION AS TO COUNTS. A number of separate and distinct felonies, all of which may be tried in the same manner, which are of the same general character, require for their proof evidence of the same kind and the punishment of the same nature, may be charged in separate counts of one information, and the party thus charged may be placed on trial for all of such counts at the same time. The question of whether the state will be required to elect between the several counts, if a motion is made by defendant that it be so required, will rest in the sound discretion of the trial court, and unless it appears that there has been an abuse of such discretion in overruling the motion, it will not be available as error.

8. **Embezzlement:** INFORMATION : ELECTION AS TO COUNTS. In the case at bar the defendant was charged with embezzlement of the funds of a county while he was its treasurer, in an information containing several counts charging several and distinct embezzlements. He made a motion that the state be required to elect upon which of the several counts of the information it would prosecute him. The trial court withheld its ruling upon this motion until the close of the introduction of the state's testimony in chief, at which time the motion was sustained and

the state required to elect under which count of the complaint it would further proceed. *Held*, So far as the record discloses, there was no abuse of discretion in the action of the trial court.

9. **Instructions.** It is not error to refuse to give an instruction when the main purpose sought to be effected by giving the instruction is clearly and fully embraced in and accomplished by other instructions read to the jury, and it appears that no prejudice could have resulted to the rights of the complaining party by reason of such refusal.

10. **Embezzlement: STATUTES.** The act of the legislature of 1891, entitled "An act to provide for the depositing of state and county funds in banks " (Session Laws, 1891, p. 347, ch. 50), did not repeal so much of section 124 of the Criminal Code as is in relation to loaning county funds, and constitutes such loaning by an officer entrusted with their care and disbursement an embezzlement.

ERROR to the district court for Antelope county. Tried below before KINKAID, J.

The opinion contains a statement of the case.

*H. C. Brome, Douglas Cones,* and *Barnes & Tyler,* for plaintiff in error:

The information was not made or filed by an officer authorized by law to do so. (*Richards v. State,* 22 Neb., 145; *White v. State,* 28 Neb., 341.)

The court erred in overruling the application of plaintiff in error to be discharged for want of prosecution. (*In re McMicken,* 18 Pac. Rep. [Kan.], 473; *People v. Morino,* 24 Pac. Rep. [Cal.], 892; *Ex parte Two Calf,* 11 Neb., 221.)

The court erred in overruling the plea in abatement, and in striking the same from the record. (Maxwell, Criminal Procedure, pp. 524, 525.)

The amount of proof required to establish the offense of embezzlement is similar in kind and quantity to that required to establish any other offense of the same grade. (16 Am. & Eng. Ency. Law, 504.)

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state:

The order overruling the application of plaintiff in error to be discharged was without error. (*State v. Cox,* 65 Mo., 29; *State v. Huting,* 21 Mo., 464.)

There was no error in the ruling on the motion to require the prosecuting attorney to elect upon which count of the information he would proceed. (1 Bishop, Criminal Procedure, sec. 461; *Bailey v. State,* 4 O. St., 442.)

HARRISON, J.

On December 15, 1891, an information was filed in the district court of Pierce county, charging the plaintiff in error with the crime of embezzlement of public money, the property of such county, during the time he was treasurer thereof. On the 27th day of April, 1893, the application of plaintiff in error for a change of venue was granted, and the case was sent to Antelope county for trial December 23, 1893; as a result of a trial, a verdict of guilty was rendered and entered, and, after motions for new trial and in arrest of judgment were heard and overruled, plaintiff in error was sentenced to a term of three years' imprisonment in the penitentiary. He has presented the cause to this court by petition in error.

A bill of exceptions was filed, which was attacked on the part of the state by a motion to quash, which was sustained; as a consequence of which action, we will be confined in our examination of the points raised for adjudication by the assignments of error to those which can be discussed and determined without reference to the bill of exceptions.

One assignment of error refers to alleged misconduct of the court during the trial. The facts on which this assignment depends for its force were made a part of the record by affidavits in which they were set out. There were also counter-affidavits in relation to the same matter filed for

Korth v. State.

the state.  Affidavits of the character of these, in order that the subjects embraced in them may be available in the presentation of questions in this court, must be preserved in a bill of exceptions; and if it was done in this case, the bill of exceptions has been quashed, consequently the facts with relation to this objection are not properly before this court for examination.  It follows that the assignment of error is unsupported and must be overruled.

During the pendency of the cause, and before trial, the plaintiff in error made application by motion to be discharged on the ground that four terms of court, succeeding the one during which the information under which he was prosecuted was filed, had passed without a trial being accorded him, and that the delay or failure to bring the cause to trial was not occasioned by any application or act of his or by lack of time.  Affidavits were filed in support of the motion, to show that the trial of the case had not been delayed on application of the plaintiff in error, or for want of time, and on the part of the state mainly directed to an attempt to show the opposite to be true as to both facts; but the affidavits are not presented to this court by a bill of exceptions, and we cannot examine or consider them. The record before us does not disclose that the delay in the trial of the cause was caused in any manner by the plaintiff in error, or for lack of time at any term of the court to try it, nor does the contrary appear.  For the purpose of the motion doubtless it devolved upon the plaintiff in error, if not disclosed by the record, to show that there had been no postponement of the trial of the cause on his application, or that the delay was not occasioned by the want of time to try it during the third term of court held subsequent to a term at which the information was filed.  In the absence of the appearance of these facts in the record or a showing in regard to them, we think the presumption must prevail that the court proceeded regularly and without error, and properly held and placed the plaintiff in error upon trial

at the time it did; or it will not be presumed that the trial court, in the face of the existence or a showing of the existence of the facts which entitled the plaintiff in error to his discharge under the provisions of section 391 of the Criminal Code, ignored his constitutional right to a speedy trial (see Constitution, art 1, sec. 11), and improperly held and tried him for the crime with which he was charged.

Another contention is that the information filed in the case was not made or filed by any officer or person authorized by law. The information was made and filed by W. W. Quivey, who was not the county attorney of Pierce county at the time, and whose authority, if he possessed any, was derived from an order of the court in this particular case, which was as follows: "Now on this 14th day of December, 1891, the same being a judicial day of the regular December, 1891, term of said court, this cause came on for hearing, and the county attorney failing to appear and prosecute this case, and it appearing to the court that said county attorney is disqualified from prosecuting on behalf of the state of Nebraska, by reason of his having been retained as counsel for the defendant, Carl Korth, prior to his election and qualification as county attorney aforesaid; and it further appearing that said county attorney has no deputy qualified to appear for him in this cause: It is therefore ordered by the court that W. W. Quivey is hereby appointed by said court to act as county attorney in this case, and that John S. Robinson is hereby duly appointed by the court to assist the said W. W. Quivey as county attorney in the prosecution of this cause." Pursuant to this order W. W. Quivey acted in all particulars as county attorney in this case. It is argued that, under the provisions of our constitution (art. 1, sec. 10), that "No person shall be held to answer for a criminal offense * * * unless on a presentment or indictment of a grand jury; *Provided*, That the legislature may by law provide for holding persons to answer for criminal offenses on infor-

Korth v. State.

mation of a public prosecutor; and may by law abolish,
limit, change, amend, or otherwise regulate the grand jury
system;" and the act of 1885, establishing prosecution of
crimes by information, in one section (Criminal Code, sec.
579,) of which it is stated, "All informations shall be filed
during term in the court having jurisdiction of the offense
specified therein, by the prosecuting attorney of the proper
county as informant,"—the county attorney is indicated as
the person—and the only one—who can make and file an
information in a prosecution by such proceeding without
the intervention and finding of a grand jury; that the
several district judges or courts of the state possess no
right to and cannot appoint any one to file information in
the place and stead of the county attorney. The legislature
which passed the act authorizing prosecutions by information
also passed an act in relation to county attorneys and
their duties, etc. In one section (Compiled Statutes, sec.
21, ch. 7) it was provided: "In the absence, sickness, or
disability of the county attorney and his deputies, the court
before whom it is his duty to appear, in which there may
be business for him, may appoint an attorney to act as
county attorney, by an order to be entered upon the minutes
of the court, but who shall receive no compensation from
the county except as provided for in section six (6) of this
act [Compiled Statutes, sec. 20, ch. 7]." This, doubtless,
gave the trial court power to make the appointment, and
the person designated in its order possessed the authority
to act in this particular case in all matters or questions
arising therein which would properly have fallen within
the province of the county attorney to examine and deter-
mine had he been present and not disqualified to act, nor
do we think, in thus holding, we do any violence to the
proper enforcement of the provisions of the constitution
and the law of 1885 invoked by the plaintiff in error, when
given their true and practical significance. It is urged that
the power to thus appoint an attorney to prosecute a cause

against a person accused of. crime is liable to be abused, and some one assigned the duty who is incompetent, or who will not fairly conduct the case, but may, in the interest of private parties who desire an exceedingly vigorous prosecution to be made, allow the criminal case to become the means of satisfying personal spite or the gratification of malicious purpose, and the party charged with crime be persecuted, rather than prosecuted as the law contemplates. This contention involves the assumption that the person who has been so fortunate as to be elevated by a majority of the votes of the electors of the judicial district to the high and honorable position of district judge will lend himself, or be hoodwinked into seeming to countenance the scheme depicted in this argument, and the member of the bar appointed will be disreputable and ready to disregard his oath and act in an unprofessional manner. With this view we cannot agree. It must rather be presumed that both judge and attorney will perform their respective duties fairly, impartially, and honorably. It is possible that, in exceptional cases, what is claimed in the argument may happen, but if so, it may always be remedied in the same or a higher court.

A plea in abatement was filed in behalf of plaintiff in error and on motion of the state was stricken from the files, or practically overruled. This action of the court is assigned as error. The plea was founded upon the same matters as presented in the motion to discharge the plaintiff and which we have hereinbefore discussed. Whether it was proper practice for the court to strike the plea from the record, or whether the subjects set forth in the plea were such as may properly be presented by the plea in abatement, we need not stop to consider, for, on December 17, 1891, plaintiff in error had been arraigned and pleaded generally, and on the date the plea in abatement was filed the plea to the general issue was still of record and not withdrawn. This being true, all defects which might have

been excepted to by plea in abatement were waived (see sec. 444 of the Criminal Code); and if it was error, which we do not now decide, for the court to strike the plea from the files, it could not prejudice the rights of plaintiff in error, as, at the time, the plea could not have been of any avail.

Another objection is that, at the time the plaintiff in error was placed on trial, the record did not show that he had ever been accorded a preliminary examination for the crime with which he was charged in the trial court. This objection was made in the district court at the inception of the introduction of testimony and was overruled by the court. This is assigned for error. The prosecution was instituted in the county court of Pierce county and, after it reached the district court, an information was filed. Afterward, during the pendency of the cause in Pierce county, an order was made in which it was recited that the transcript of the record of the hearing before the county judge, and some of the accompanying papers, and particularly the information filed in the examining court, had been lost, and that a new transcript and copy of the information be substituted. A change of venue was applied for and granted and the case was transferred to Antelope county, and the order of substitution was not fulfilled until after the removal of the cause to Antelope county, and the commencement of the trial; but the transcript then filed disclosed that the plaintiff in error waived an examination in the county court. This being true, there was no prejudice to his rights in proceeding with the trial at a time when the transcript of the hearing in the examining court was not in the record by reason of being lost or mislaid, or in allowing another transcript and copy of such information to be substituted.

Another alleged error is that the court erred in refusing to require the state to elect on which count of the information the plaintiff in error should be tried. There were five counts in the information, as to the fourth of which a *nolle*

*prosequi* was entered before the cause came to trial. A motion was filed at or about the time of trial to require the state to elect upon which count of the information it would proceed. Upon this the court withheld its ruling until such time as the evidence for the state should all be introduced, and when the trial had progressed to the stage indicated, sustained the motion, and an election was accordingly made at that time by the state. It is urged that the court erred in not sustaining it at the time when made. After the fourth count of the complaint was ignored, there still remained four counts in which separate and distinct felonies were charged, but each was a charge of embezzlement of public money, the money of the county of which the plaintiff in error was treasurer. The offenses were all of the same general character, required for their proof the same quality of testimony, the same manner of trial and mode of punishment, and it was proper to try the plaintiff in error upon the several counts at the same time. Whether there should be an election as to the particular count was a question within the discretion of the trial court. This, in the case at bar, was exercised by allowing the prosecution to introduce its testimony and then requiring it to elect, and we cannot discover from the record that in this there was any abuse of discretion. As to the main proposition, see 1 Bishop, Criminal Procedure [3d ed.], secs. 424, 450, 451; Wharton, Criminal Pleading & Practice, sec. 285 *et seq.; Commonwealth v. Jacobs,* 25 N. E. Rep. [Mass.], 463; *Pointer v. United States,* 14 Sup. Ct. Rep., 410; *State v. Hodges,* 26 Pac. Rep. [Kan.], 676; 4 Am. & Eng. Ency. of Law, 754–756; *Roberts v. People,* 17 Pac. Rep. [Colo.], 637.

It is claimed the court erred in refusing to give instruction numbered 2, requested by plaintiff in error. This instruction was as follows: "You are instructed that in law the words *'prima facie'* mean 'at the first blush,' 'on the first appearance of.' Such evidence, in a criminal case, is

not sufficient to warrant a conviction. The rule obtains in all criminal prosecutions that the evidence must be sufficient to convince the jury of the defendant's guilt, and of every element of the transaction going to establish his guilt, beyond all reasonable doubt." Instruction numbered 1, given at the request of plaintiff in error, reads: "You are instructed that the statutes of this state provide that any failure or refusal to pay over public money, or any part thereof, by any officer or other person charged with the collection, receipt, transfer, disbursement, or safe-keeping of the public money, or any part thereof, whether belonging to the state, or to any county, or precinct, or school district, or organized city or incorporated village in this state, or any other public money whatsoever,  *  *  *  shall be taken and held as *prima facie* evidence of embezzlement. Nevertheless you are instructed that the state must prove to you beyond all reasonable doubt that the defendant converted the public moneys of Pierce county to his own use, with intent to defraud the said county out of the same; and if you have any reasonable doubt of such fact, you will give the defendant the benefit of such doubt and find him not guilty." The argument is, that inasmuch as the court thought fit to give instruction numbered 1, then, to convey to the jury a proper understanding of its terms, and in particular the words "*prima facie* evidence," No. 2 should have been given. It will be noticed that in the concluding portion of No. 1 the jury is informed that notwithstanding all that may have been stated in the preceding portion of the instruction the proof to be sufficient to convict must be beyond a reasonable doubt, and in an instruction numbered 3, asked by plaintiff in error and given, this feature of the requirement in regard to the proof was stated in strong terms, and in instruction numbered 3, given by the court on its own motion, the above rule was clearly and positively announced, and it also appears in other portions of the instructions. In view of all this, we are satisfied that no

prejudice could have resulted to the rights of plaintiff in
error from the refusal of the court to give the instruction
indicated in the assignment of error.

The giving of each of the instructions numbered 1 and
2 of the charge to the jury given by the court on its own
motion is assigned as error. The main objection raised is
claimed to be applicable to both and we will so examine it.
No. 1 of these instructions was a copy of the section of the
Criminal Code defining the crime of embezzlement of pub-
lic money, under which this prosecution was instituted, and
No. 2 quoted the first count of the information and stated
that it contained a charge against the plaintiff in error of a
violation of the section set forth in instruction numbered 1.
It is alleged that the act of the legislature of 1891, in re-
lation to depositing the county funds in banks, repealed at
least so much of the section defining the crime of embezzle-
ment as refers to the loaning of such funds, and that these
instructions were erroneous in not noticing the act of 1891,
and its claimed effect upon the laws of embezzlement, and
in not informing the jury that it should not consider any
evidence in relation to loaning the county funds, as bearing
upon the issue which was being tried. To the proposition
that the act of 1891 repealed the portion of the law of em-
bezzlement in regard to the loaning of funds of a county
we do not agree. The act of 1891 was entitled "An act to
provide for the depositing of state and county funds in
banks," (Session Laws, 1891, p. 347, ch. 50,) and in its
text it is confined to providing for the deposit of such
funds, for safe-keeping, in banks, under certain require-
ments as to bonds being furnished for the security of such
funds, and other details, and in each and every detail it ap-
pears that it is for the county and its benefit that such de-
posits are to be made, the treasurer acting in each and every
instance for and in behalf of the county, and as prescribed
by law and not of his own volition. If he refuse to per-
form any of the statutory requirements, he is liable to pun-

Korth v. State.

ishment therefor, and if he deposit the money of the county, under the direction of the law, in a bank which has given bond he is not liable for any money so deposited. It is true there is a section of the act referred to which defines as a crime the making of any profit whatever, directly or indirectly, by the county treasurer out of any money belonging to the county, in his charge, by loaning it. It is the fact that a profit is derived from it that subjects him to punishment and not the fact of the loaning. The deposit of the funds which the treasurer is called upon to make by the law in question is, in effect, a deposit by the county. The treasurer has only to place it where directed and draw it when needed for county purposes. In the law defining embezzlement the loaning by the treasurer, either with or without interest, is evidence of a conversion of the funds to his own use and is to be punished as an embezzlement. Clearly, evidence of a deposit of the funds such as is contemplated by the act of 1891 would not be competent and could not be received in a prosecution for embezzlement of county funds by the treasurer, as tending to show a loan; nor does the fact that an attempt has been therein made to provide a punishment of the treasurer for making a profit out of the public money by loaning it, in any manner or degree conflict with or abridge the right or power of the state to punish the act of loaning the funds by the treasurer as an embezzlement. We are clearly of the opinion that the act of 1891 referred to did not work a repeal of the portion of the law in relation to the loaning of county funds by officers entrusted with their care and charged with their disbursement, and which constitutes such loaning a conversion and embezzlement of the funds loaned. The judgment of the district court is

AFFIRMED.