[Crim. No. 100.   Third Appellate District.—October 22, 1909.]

# THE PEOPLE, Respondent, v. WILLIAM A. PINER, Appellant.

CRIMINAL LAW—PLEADING—JOINDER OF OFFENSES RELATING TO ONE TRANSACTION—VALIDITY OF CODE AMENDMENT.—The amendment in 1905 of section 954 of the Penal Code, so as to provide that "the indictment or information may charge different offenses, or different statements of the same offense, under separate counts, but they must all relate to the same act, transaction, or event," is valid and effective, and not subject to any constitutional objection.

ID —SUBSTANTIAL RIGHTS OF DEFENDANT SAFEGUARDED—JOINDER OF DISTINCT OFFENSES DISALLOWED.—The legislature, while recognizing that there is no danger of violating any substantial rights from permitting two different offenses arising from exactly the same particular circumstances, "act, transaction or event," to be joined, yet safeguarded the substantial rights of the defendant by providing expressly that "charges of offenses occurring at different and distinct times and places must not be joined."

ID.—CODE AMENDMENT HARMONIOUS WITH OTHER CODE PROVISIONS.— There is no distinction in principle between the code amendment authorizing the charging of two different offenses relating to the same act or event, and other code provisions authorizing the jury to find a verdict for a less crime included within a greater offense charged.

ID.—BENEFICIAL EFFECT OF METHOD ALLOWED.—The method allowed by the amendment, while harmless to the rights of the accused, must result in a just administration of the criminal law. It permits the jury, under the court's instructions, to return a verdict of guilty of that one of the two offenses charged which the evidence discloses had been committed, thus avoiding, in large measure, the mistrials which have too often resulted from a disagreement between the proof and the allegations of the indictment or information.

ID.—INFORMATION CHARGING BURGLARY WITH INTENT TO COMMIT LARCENY AND GRAND LARCENY—DEMURRER PROPERLY OVERRULED.—An information charging burglary with intent to commit larceny at a time and place specified, and charging grand larceny committed at the same time and place "as a part of the same act, transaction or event" in a distinct count, conforms to the amendment of section 954 of the Penal Code, and a demurrer thereto for the misjoinder of two distinct offenses was properly overruled.

ID.—OFFENSES CHARGED REQUIRING THE SAME PROOF.—The offenses thus charged required for their proof the same quality of testimony and the same manner of trial and punishment. Though the crime of

burglary may involve an intent to commit any of the crimes mentioned in section 459 of the Penal Code, yet it will not be denied that proof that a larceny or felony had been committed in the building by the party making the entry would be competent not alone for showing the intent, but also the fact of the entry.

ID.—MOTION TO SET ASIDE INFORMATION—POINT OF DEMURRER INVOLVED.—A motion to set aside the information on the ground that defendant had not been committed by a magistrate for either of the offenses charged, involving the same point raised upon the demurrer, was properly denied. The defendant had a preliminary examination on both charges, since the facts necessarily applied to both offenses.

ID.—EVIDENCE—VOLUNTARY CONFESSION OF GRAND LARCENY TO SUSPECTED RELATIVE—PROMISE OF ENDEAVOR TO PROTECT DEFENDANT.—A voluntary confession by defendant of the commission of the grand larceny charged in the information, not made for the purpose of being used in evidence against him, but made to a relative, not an officer of the law, who was also suspected of the crime, who held out to the defendant nothing beyond the hope that such relative would endeavor to keep defendant's connection with the crime from becoming known to the authorities, was properly admitted in evidence against the defendant.

ID.—EVIDENCE OF GOOD CHARACTER—INSTRUCTION AS TO CAUTION—HARMLESS ERROR.—Evidence of good character of the defendant is in aid of the presumption of innocence, and is no more to be laid out of view by the jury in their deliberations than is the presumption itself. Yet such evidence is important only where there may exist some doubt of the defendant's crime. An instruction that such evidence should be received "with great caution" was erroneous; but in view of the conclusive evidence of defendant's guilt, the error was harmless, since the jury could, consistently with their verdict, have found that defendant's good character was conclusively shown.

ID.—GENERAL CAUTION OF JURY—SPECIAL CAUTION BEYOND PROVINCE OF COURT.—As matter of fact, all evidence in a criminal case should be considered by the jury with caution or that deliberation which will insure a just verdict. But to select a particular species of evidence for special caution to the jury, thus disparaging the probative effect thereof, is a function specially excluded from the province of trial courts, even in those few special cases where the legislature has declared that it may be done.

ID.—INSTRUCTION AS TO CONFESSION—MATTER NOT FOR JURY—HARMLESS ERROR.—An instruction that "a person's declaration or voluntary confession is always admitted in evidence against him, for the law presumes that a person will not say anything untrue against himself or his interests," is erroneous, as presenting matter not for the consideration of the jury. But the error in giving it was harmless, where there is no denial that the confession was made, and

no attempt was made to impeach the witness who testified thereto, and there was uncontradicted evidence of the defendant's guilt.

APPEAL from a judgment of the Superior Court of Lake County, and from an order denying a new trial. M. S. Sayre, Judge.

The facts are stated in the opinion of the court.

T. J. Geary, and Bond & Churchill, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

HART, J.—The defendant, having been convicted of the crime of grand larceny, brings the cause to this court on an appeal from the judgment and from the order refusing to grant his motion for a new trial.

The appellant claims a reversal for these reasons: 1. That the demurrer to the information should have been sustained because there are set out in the accusatory pleading two separate and distinct offenses; 2. That the court erred to his prejudice in allowing, over his objections, the testimony of the witness Robinson purporting to give a confession of guilt by the defendant, the specific contention upon this point being that said alleged confession was not voluntarily made, and, therefore, in law, was no confession at all; 3. That the court committed prejudicial error in giving certain instructions to the jury.

1. The information, in the first count thereof, charges the defendant with the crime of burglary, alleging that on the twenty-third day of August, 1908, he burglariously entered the store of one P. Q. Robison, at Kelseyville, Lake county, with the intent, etc.

The second count of the information charges the crime of grand larceny in the following language: "The said William A. Piner, as a part of the same act, transaction or event, alleged in the first count of this information, aforesaid, on the twenty-third day of August, one thousand nine hundred and eight, at the said county of Lake, and before the filing of this information, willfully, unlawfully and feloniously did take, steal, and carry away from the aforesaid store of P. Q. Robison, aforesaid, twenty-five twenty-dollar gold pieces, of the

gold coin of the United States of America, the personal property of one Matt L. Rowden, of the value of five hundred dollars, lawful money of the United States; contrary to the form,'' etc.

The contention of the appellant is, as before suggested, that two distinct offenses cannot properly be charged in an indictment or information, and that, as two distinct offenses are charged in the information upon which the defendant was tried and convicted, the court erred in its order overruling the demurrer.

The attorney general insists that the information conforms to the provisions of section 954 of the Penal Code, as amended by the legislature of 1905, [Stats. 1905, p. 772], and that the demurrer was, therefore, properly overruled.

The section of the Penal Code just mentioned reads: ''The indictment or information may charge different offenses, or different statements of the same offense, under separate counts, but they must all relate to the same act, transaction, or event, and charges of offenses occurring at different and distinct times and places must not be joined. The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant can be convicted of but one of the offenses charged, and the same must be stated in the verdict.''

So far as we are advised to the contrary, this is the first occasion on which the foregoing section, in its amended form, has been before any of the reviewing courts.

Prior to its amendment by the legislature of 1905, the section read: ''The indictment or information must charge but one offense, but the same offense may be set forth in different forms under different counts,'' etc. From a comparison of the section as it formerly read with the section as, under the amendment, it now reads, it would seem to be very clear that there has been practically no material change effected by the amendment except in that part of it authorizing the charging of different offenses in the same indictment or information where such offenses ''relate to the same act, transaction or event.'' The other provisions of the section merely authorize, in perhaps a little different language, what the old section declared could be done, or, in other words, are only a reenactment of the old section with some immaterial verbal changes.

11 Cal. App.—35

We can perceive no reason for holding that the legislature did not mean exactly what the language of the section very plainly and unambiguously declares. That it was intended, by the amendment, to authorize the statement in an indictment or information of two or more distinct offenses, where the same grow out of precisely the same act, transaction or event, is a proposition which we think admits of no possible room for debate. If the language of the section with regard to this proposition were not itself so clear and unquestionable as that it would require the aid of construction in order to gather its true meaning, there would be no necessity for going further than that part of the section itself wherein it is expressly provided that "charges of offenses occurring at *different* and *distinct times* and *places* must not be joined."

It will thus be observed that the legislature, while recognizing the fact that no danger of violating any of the substantial rights of an accused person could result from charging in an indictment or information two different offenses which have arisen from exactly the same particular circumstances— that is, from the same act, transaction or event—was careful to protect and safeguard such person against the harm which would inevitably follow the charging of two different offenses occurring at different times and places, and which, in the very nature of things, could have no possible bearing upon or relation to each other whatever.

We can discern no distinction in principle between the provision authorizing the charging of two different offenses relating to the same act or event and those provisions of our criminal law which authorize a jury in a case where the offense charged embraces more than one crime—as, for instance, the crime of murder, within which is included manslaughter, or robbery, within which is included larceny, or assault with intent to murder, within which is included assault with a deadly weapon and often simple assault—to return a verdict of guilty of any one of the offenses comprehended within the one charged which the evidence justifies or warrants.

There is no claim put forward here that section 954 of the Penal Code, as amended in 1905, violates any provision of the constitution, nor can we see how such a claim could be sustained if it were urged. As we have suggested, there is no ground for apprehending that any injury would result to a

defendant from the method of criminal pleading authorized by section 954, for only one set of facts and circumstances, directed to a single act or event, could be proved, and, of course, it would not only be competent, but absolutely necessary, to prove those same facts and circumstances where but one offense was charged. Therefore, we can think of no principle forbidding the legislature to authorize the setting out of two distinct offenses in as many counts in cases where the circumstances under which a criminal act is committed are such as to inspire in the prosecuting officer serious doubt as to which of two offenses the evidence would show had been committed. Such a method, while obviously innocuous in its effect upon any of the rights of the accused, must result in a just administration of the criminal law. For where, as under the old method, the result of not proving the specific charge would be the acquittal of the accused and to cause another trial of the same facts with its attendant trouble and expense, assuming that once in jeopardy and former acquittal could not be successfully pleaded at the subsequent trial, under the present method the jury, under the court's instructions, could return a verdict of guilty of that offense of the two charged which the evidence disclosed had been committed, and thus there would be avoided, in a large measure, the mistrials which too often result from a want of correspondence between the proof and the allegations of the indictment or information.

But while, as stated, the precise question here has never until now been before the higher courts of this state, we are not altogether without authority upon the proposition from other jurisdictions.

The state of Wisconsin has a statute upon the subject of pleading criminal offenses similar in terms to section 954 of our Penal Code.

In *Porath* v. *State*, 90 Wis. 527, [48 Am. St. Rep. 954, 63 N. W. 1061], the defendant was charged in the first count of the information with the crime of rape upon his daughter and in the second count with the crime of incest, of which latter offense he was convicted. A plea in abatement was interposed to the first count on the ground that the defendant had not had a preliminary examination on the charge set out in said count, and the trial court overruled said plea. In sustaining said ruling, the supreme court of Wisconsin has

this to say: "The plea in abatement to the first count of the information was properly overruled. It appeared that both counts were founded upon the same transaction, and were introduced to meet the legal aspects of the evidence as it might be produced at the trial, and in order that the defendant might not escape conviction of any offense which it might be found the defendant had committed by the single transaction in question. . . . Both counts were founded on the same transaction, and the defendant had in fact had a preliminary examination upon the charge of incest."

In *Korth* v. *State,* 46 Neb. 631, [65 N. W. 792], the information contained four counts in which separate and distinct felonies were charged, and the supreme court, upholding the refusal of the trial court to compel the people to elect at the beginning of the trial to which of the counts the testimony would be addressed, says: "The offenses were all of the same general character, required for their proof the same quality of testimony, the same manner of trial and mode of punishment, and it was proper to try the plaintiff in error upon the several counts at the same time." (See *Jackson* v. *State,* 91 Wis. 263, [64 N. W. 838]; *Commonwealth* v. *Dunn,* 19 Pick. 479; *Commonwealth* v. *McLaughlin,* 12 Cush. 612; *People* v. *Rynders,* 12 Wend. 426.)

So in the case at bar, the offenses charged required for their proof the same quality of testimony and the same manner of trial and mode of punishment. It is true that the gist of the crime of burglary is in the entry of a building with the *intent* to commit any of the crimes mentioned in section 459 of the Penal Code, and it is therefore immaterial, in the proof of the consummation of said crime, whether a larceny or other felony is shown to have been actually committed or not, if the intent to do so is present. But it will not, of course, be denied that proof that a larceny or felony had been committed in the building by the party making the entry would be perfectly competent, not alone for the purpose of showing the intent but also the fact of the entry.

Interesting discussions of the principle at the bottom of section 954, as it now reads, may be found in the following cases, decided by the federal courts, where the rule as to joinder of offenses originating in the same act or transaction has long been recognized and applied: *Pointer* v. *United States,* 151 U. S. 396, [14 Sup. Ct. 410]; *Potter* v. *United*

*States,* 155 U. S. 438, [15 Sup. Ct. 144] ; *Dunbar* v. *United States,* 156 U. S. 185, [15 Sup. Ct. 325] ; *United States* v. *Jones,* 69 Fed. 973.

Our conclusion upon this point is, as must be manifest from the foregoing discussion, that the court below properly overruled the demurrer. A motion was made, before the trial, to set aside the information on the ground that the defendant had not been legally committed by a magistrate for either of the offenses charged in the information, and the same was denied, but as there is no point made on said motion other than the point raised by the demurrer, and which we have discussed and disposed of, there is no necessity for giving the ruling special attention. There can be no doubt but that the defendant had a preliminary examination on both charges, since it is clear that the facts necessarily applied to both offenses.

2. The objection that the court erred in allowing the witness, P. Q. Robison, to testify to an alleged confession of guilt for the asserted reason that said confession was not voluntarily made, will be better understood by a brief reference to the facts.

It appears that the store of said P. Q. Robison, at Kelseyville, in Lake county, was, on the night of August 23, 1908, entered by some party and a large sum of money abstracted from the safe in said store. The bulk of the money so taken, which exceeded the sum of $1,000 in amount, was the property of other parties than the proprietor of the store, it having been deposited with Robison for safekeeping. Of said money, the sum of $500 belonged to one Rowden, and it is this particular money which formed the basis of the charge for which the defendant was tried and of which he was convicted.

It appears that immediately after the theft suspicion was fastened upon both Robison, the proprietor of the store, and the defendant, as the guilty parties. Robison and Piner are related by blood, being first cousins. About six weeks prior to the larceny, Piner, according to the testimony of Robison, called at the latter's house at about 11 o'clock at night, and asked for a key to the store, explaining that he (defendant) had received a call to go to "Pieta and Hopland with his auto and was out of gasoline." Robison gave the defendant a key to the store door so that he could go to the gasoline tank, and told him to keep the key. From that time to the night

the store was entered and the money taken the defendant retained the key in his possession.

On the Saturday following the day upon which the money was stolen (the larceny was perpetrated on a Sunday night), the defendant went to the store and, addressing Robison, said: "I understand you suspicion me of taking the money," to which statement Robison replied, "Yes, that was a fact." Piner protested his innocence, declaring that he could not understand how anybody could suspect him and asking Robison if he thought that he (defendant) took the money. Robison then said: "I did not think you took it until my suspicions were directed to you by others, and that I am making this investigation as much for your own good as for my own, as you know I am suspicioned as well as yourself. If you are not guilty, why, I want you to help me clear this thing up, and if you are, why, I will help you out of this trouble." On the succeeding day (Sunday), so Robison testified, the defendant called at the home of the former and, addressing Robison, said: "Perry, I am in trouble. I want you to help me." Robison answered, "Well, if there is anything I can do to help you, I will do it." Piner then said to Robison that the latter could help him, and after Robison again promised to assist the defendant out of the trouble to which he referred, the latter said: "I took the money, and I want you to help me; don't know why I took it, and I am very sorry that I took it." Piner exhibited a pistol during this conversation and threatened to take his own life unless he was assisted out of the trouble by Robison. It was subsequently arranged between Robison and the defendant, with the view and in the hope of stopping further investigation by the officers and further effort to disclose the identity of the perpetrator of the crime, that Robison should get together a sufficient amount of money to cover the losses sustained by parties who had money on deposit with him on the night the larceny or burglary was committed, and that Piner should place said money in some spot where it could be found by the sheriff, aided by Robison, who was, previously to the search, to be apprised by Piner of the exact location of the money. In accordance with this arrangement, Robison procured the sum of $1,058.65 and placed it under the steps of a Mrs. Piner's house, and later informed the defendant where it could be found. Piner then secured and carried the money to a point not far distant from

the town and cached it in the bed of a creek. The defendant later told Robison where the money had been left by him and subsequently the latter and the sheriff found and recovered the money.

Robison declared, on cross-examination, that the defendant did not admit having entered the store and taken the money until he (Robison) promised to assist him in "getting out of the trouble."

The facts as thus briefly detailed disclose the circumstances under which the alleged confession was made, and it is earnestly argued that it is thereby shown that said confession was not free and voluntary.

It will be observed that there was nothing said by the defendant during the course of the first conversation between himself and Robison involving in the slightest degree a confession of guilt. On the contrary, the defendant at that time stoutly denied connection with the commission of the crime, and expressed surprise that he should be under suspicion. Nor was there on that occasion any inducement held out by Robison to Piner to make a confession, except upon the condition that he was actually guilty. Robison merely said, addressing Piner, "If you are not guilty, why, I want you to help me clear this thing up, and if you are guilty, why, I will help you out of this trouble."

As to the second conversation between Robison and the defendant, which occurred at the former's residence, and in which Piner admitted his guilt, it is clear from the testimony of Robison that the defendant called upon the former for no other purpose than to acknowledge his guilt. He called Robison out of the house and declared that he was in trouble. It was not, let it be noted, until after Piner stated that he was in trouble and besought Robison to help him out of it that he obtained from the latter a promise to so assist him. Piner well knew that Robison was not an officer of the law and that he was clothed with no authority for guaranteeing him immunity from prosecution and punishment, and it is not at all probable, nor, in fact, is it a sensible assumption, when all the circumstances of the case are considered in the light of reason and common sense, that Piner asked for Robison's promise of assistance with any other understanding than that such promise meant or could mean anything more than what the latter in fact did do—undertake to conceal

and keep from the authorities the identity of the guilty party. As was suggested by the court below, in ruling on the objection to the testimony of the declarations of the defendant, the promise of Robison does not appear to have been made in consideration of a confession, but merely involved an agreement upon his part to assist the defendant out of some trouble which the latter had, previously to exacting the promise, expressed a willingness to admit that he had either brought upon himself or had come to him in some other way. It becomes plainly manifest from an examination of Robison's testimony that, whatever may have been the circumstances of Piner's confession of guilt, the object the former had in view in securing it and the latter's purpose in making it were, not that said confession should be used against the defendant in his prosecution for the crime, but that it should be kept from the authorities. The two men are closely related in blood, and, while Robison was anxious to get at the truth of the matter in order to remove suspicion from himself, there can be no possible doubt that, after Piner acknowledged his responsibility for the crime, the former exerted every effort before the arrest of the defendant and during his trial to exculpate the accused. Robison, it will be remembered, joined Piner before the latter's arrest in a scheme to mislead the authorities as to the identity of the party who had committed the crime, and at the trial, it is clearly apparent from the record, persistently sought to make it appear that Piner's admission of guilt to him was made under circumstances which would render his testimony upon the question of the confession incompetent and inadmissible.

Greenleaf, at section 219 of his treatise on Evidence, states the rule as to confessions in the language of Eyre, C. B., in *Warickshall's Case*, 1 Leach C. C. 209, that "a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it, and, therefore, it is rejected." The theory, of course, is that the prisoner, in making a confession obtained by the influence of hope or fear, applied by a third person to his mind, may be induced by such pressure to admit facts unfavorable to him, without regard to their

truth, in order to secure the promised relief or avoid the threatened danger. (Greenleaf on Evidence, sec. 219a.)

In the early case of *People* v. *Smith,* 15 Cal. 408, it is said that "a distinction is made by many English cases between confessions induced by one having no authority or control over the prisoner and those induced by persons who have such authority, as constables, prosecutors and the like. But the cases seem to hold the owner of goods stolen to stand in this relation."

We are in no doubt that if Robison had, in order to extort a confession from Piner, and by such means obtained it, represented to him that he (Robison) was in a position to insure him (defendant) either complete immunity from prosecution or lenient treatment in the matter of punishment, or had induced the defendant to confess by threats which inspired in Piner fear that his crime would be apprehended and he severely punished unless he admitted his guilt, testimony of the confession could not have been properly received. But, as seen, the hope held out by Robison was not that Piner might escape prosecution and punishment at the hands of the public authorities, but that Robison would do all in his power, as the evidence shows that he did do, to prevent the defendant's connection with the crime becoming known to the authorities.

The court's ruling admitting the evidence of the confession was proper.

3. Instructions 7 and 12, given by the court, are assailed as being erroneous and prejudicial.

Instruction 7 relates to the evidence of the previous good character of the defendant, and the specific complaint urged against it is that the court, in giving it, violated article VI, section 19, of the constitution, in that it thus instructed upon the weight or effect of the evidence by declaring that evidence of good character should be considered "with great caution." Where the court found its authority for thus instructing the jury we are not advised by the attorney general. Evidence of good character is to be considered by the jury in the same manner as evidence addressed to any other essential fact in the case. The proof of good character is in aid of the general presumption of innocence, and, as the supreme court says in *People* v. *Ashe,* 44 Cal. 291, "is no more to be laid out of view by the jury in their delibera-

tions than is the original presumption itself,'' notwithstanding the dictum to the contrary in the case of *People* v. *Swift*, 28 Cal. 397. Nor is there any more reason for an admonition by the court that evidence upon previous good character should be considered with ''great caution'' than there is for a similar instruction with regard to any other of the general class of evidence in criminal cases. The legislature has not authorized such an instruction, and, if it could legally do so, we can see no reason upon principle why it should. As a matter of fact, all evidence of whatsoever nature in a criminal case should be considered with caution or with that deliberation which will insure a just verdict, but to select a particular species of evidence from the record as the theme for a special caution to the jury, thus disparaging the probative effect thereof, is a function which is specially excluded from the province of trial courts, even in those few special cases where the legislature has declared that it may be done. (*People* v. *Wardrip*, 141 Cal. 229, [74 Pac. 744].) But we are of the opinion that the instruction could not have prejudiced the rights of the defendant, for the reason that his guilt is conclusively proved by the evidence. Evidence of good character is, as a general proposition, important only where there may exist some doubt of the defendant's connection with or participation in the commission of the crime. But where, as here, there is and could be no doubt of any kind of the defendant's guilt under the evidence, there was no other just alternative left to the jury but to convict the accused, notwithstanding the evidence of good character. The jury could have found, consistently with a verdict of guilty, that the evidence conclusively established the previous good character of the accused. (*People* v. *Ashe*, 44 Cal. 291; *People* v. *Mitchell*, 129 Cal. 585, [62 Pac. 187].) The confession as proved stood before the jury uncontradicted, the defendant not testifying, and it would be extremely difficult, under this state of the record, to reconcile a verdict other than that of guilty with the testimony produced before the jury. There is practically no distinction between the situation here and where the defendant had entered a plea of guilty. Obviously, in the latter case, evidence of previous good character could not affect the question of the defendant's guilt, and it is equally as obvious that such evidence is unimportant where

guilt is admitted and the admission proved and uncontradicted. Under the circumstances of the case as presented here, we are unable to understand how the instruction complained of could have exerted in the least degree any prejudicial influence on the determination of the verdict.

The other instruction to which objection is made reads as follows: "A person's declaration or voluntary confession is always admitted in evidence against him, for the law presumes that a person will not say anything untrue against himself or his own interests."

It is claimed that said instruction is also violative of section 19, article VI, of the constitution, in that it deals with the question of the weight which the jury should attach to the confession. The impropriety of giving such an instruction to a jury cannot for a moment be doubted; yet, there having been no denial that the confession was made, nor any attempt to impeach the testimony of Robison who gave the testimony of the confession, the instruction could have resulted in no harm to the defendant. The first part of the instruction merely declares what the court had virtually already stated in the presence of the jury in its ruling on the admissibility of the confession that the same was voluntarily made, and therefore competent to be received in evidence. This is followed by a statement of what the court conceived to be the reason or theory upon which a *voluntary* confession is admissible against an accused. The court does not say that the *evidence* of the confession is presumed to be true, which, in effect, it had a right to do (Code Civ. Proc., sec. 1847), but only (in effect) that a confession voluntarily made by an accused becomes evidence admissible against him, for the reason that it is not likely that a person will deliberately tell an untruth which would militate against his own interests. The proposition stated in the instruction cannot be gainsaid, but, as we have before declared, the giving of it to a jury in any case is manifestly improper. The theory upon which voluntary confessions are admissible in evidence is of interest to the courts, but in elucidating or attempting to explain such theory to a jury there is great danger that the constitutional right of the accused to a determination of all questions of fact by the jury may be violated, so far as are concerned the facts to which such an instruction is applicable. But, as stated, it would indeed be

unreasonable to say, in view of the uncontradicted evidence of the defendant's guilt, that the instruction played a material part in influencing the verdict returned by the jury.

We have been shown no substantial reason which calls for the return of this cause to the court below for trial *de novo.*

The judgment and order appealed from are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.