# NELSON COOPER v. STATE.

No. A-5153.   Opinion Filed July 3, 1925.

(237 Pac. 865.)

Warren & Welch, T. W. Hunter, and R. C. Drake, for plaintiff in error.

George F. Short, Atty. Gen., and Leon S. Hirsh, Asst. Atty. Gen., for the State.

EDWARDS, J. For brevity and convenience the plaintiff in error will be referred to as defendant as in the court below.

On the 23d day of April, 1923, Davidson Houston was shot and killed. Thereafter the defendant, Nelson Cooper, and David Nowabbi, both full-blood Choctaw Indians, were arrested, charged with the murder of Houston. A joint information was filed against them, and a severance had. This defendant was convicted of murder, and sentenced to life imprisonment, and duly appealed.

The only question argued in the brief is the admission of a confession of the defendant made in the presence of the sheriff, county attorney, and others, soon after the arrest. This confession, it is contended, was not voluntary, but was obtained by promises and therefore inadmissible. It was reduced to writing, and signed by the defendant. The defendant did not testify, but rests his case upon this one question. From the record it appears that the sheriff talked with the defendant the next morning after he was placed in jail; told him in substance that he was sorry for him, but that they had a chain of evidence which defendant could not get by; and advised him to tell the truth. That he was interested in him because defendant was a Choctaw, and he (the sheriff) had married a Choctaw woman; that he might ask for leniency, but he could promise him nothing. The defendant then asked for the county attorney, and said, "I want to tell the truth; I am going to tell all." That the county attorney was called, and informed the defendant that what he might say would be used against him. That the defendant talked to the county attorney at some length, who took down the statement, and after it was written gave it to him to read. He examined each page, made a correction at one place, said it was true, and signed it. Before the admission of the confession the defendant testified before the court, in the absence of the

jury, denying in part and corroborating in part the testimony of the sheriff and county attorney. He made the confession, he states, under promise that the sheriff would help him. In such testimony in response to questions asked by the court he made the following answers:

"By the Court: Q. Did the county attorney ever tell you to tell anything but the truth? A. I don't remember he asked me that.

"Q. What he told you it would be best to tell the truth? A. Sheriff told me that.

"Q. Sheriff said it would be best to tell the truth? A. Yes, sir.

"Q. Did you tell the sheriff after he had told you to send for the county attorney? A. I asked him where the county attorney was.

"Q. Did you tell the sheriff you wanted to tell the county attorney the truth? A. Yes, sir. * * *

"Q. What you signed, did you just make a voluntary —just tell how it happened, or did he ask questions? A. I answered questions."

Mr. C. A. Welch, assisting in the prosecution, testified:

"* * * I came over and went into the county attorney's office. Nelson Cooper and Mr. Hurd came in, and we all sat down there, and without any excitement or disturbance on his part Nelson Cooper detailed all this statement. Now the county attorney put the leaves or sheets in the typewriter, and he would type a while, and get up with the story, and Nelson Cooper related every single word from the very beginning to the end. He detailed all about the gun, where they got the gun, and where they hid the gun after the shooting, and after the county attorney was through these leaves were handed to him, not fastened together then, handed to him leaf by leaf, and he read, or rather I couldn't say he read each, but he appeared to start at the top of each and read to the bottom, and another was handed to him until he read all of it. After he did that, Ed Box asked him if that was substantially the way it

occurred, and he said, 'Yes,' and some one handed him a pen, and he signed his name and we witnessed it. Now, there was from the time I came in contact with Nelson Cooper on until I left at no time was any kind or character of promise or threat used toward him."

The court admitted the statement, but submitted its weight by special instruction No. 6 to the jury, as follows:

"The state has introduced in evidence before you certain statements claimed to have been made by the defendant, Nelson Cooper, after his arrest and while he was in custody of the officers of the law, which statements are relied on in part by the state to establish defendant's guilt of the offense charged. The court instructs you that confessions made by one charged with an offense must be carefully scrutinized and received with great caution. Yet, when they are made voluntarily and deliberately, such confessions and statements may be considered as evidence for and against the persons making them the same as any other evidence, but, if a confession or statement made by one in custody under such circumstances as show that he was induced to make the same by the promise or assurance that it would be to his best interest to do so, or that such statement or confession was not freely and voluntarily made, then they cannot be considered as evidence against the person so making them. And in this case, if you do not find the statements made by the defendant while in custody were freely and voluntarily made, and made without any inducement offered to defendant by the persons having him in custody, and made without any threats or intimidation on the part of the persons having the defendant in custody, then you must disregard such statements as affording any evidence against the defendant whatever, but the mere fact that the confession or statements, if any, made by the defendant were made in answer to questions propounded to him while he was under arrest or in custody will not be sufficient to exclude such statements or confession as evidence or prevent you from considering the same, if the statements, if any, were made freely and voluntarily."

Where there is a conflict as to the voluntary character of a confession, the burden is on the defendant to show

that it was not voluntary. The question of admissibility is primarily for the court to determine. When admitted, the manner and circumstances under which it was made may be shown by the defendant in order that the jury may properly say what weight and value should be given it. Mays v. State, 19 Okla. Cr. 102, 197 P. 1064.

If the confession attributed to the defendant was improperly admitted, the case should be reversed. If its admission was proper, the evidence is ample, and the judgment should be affirmed.

A confession, to be admissible, must be entirely free and voluntary. The following are some of the enlightening cases on this question: Thomas Bram v. U. S., 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; People v. Thompson, 84 Cal. 598, 24 P. 384; State v. Spaugh, 200 Mo. 571, 98 S. W. 55; People v. Piner, 11 Cal. App. 542, 105 P. 780; People v. Lipsczinska, 212 Mich. 484, 180 N. W. 617; Berry v. State, 4 Okla. Cr. 202, 111 P. 676, 31 L. R. A. (N. S.) 849; Anderson v. State, 8 Okla. Cr. 90, 126 P. 840, Ann. Cas. 1914C, 314; Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; Wilson v. State, 16 Okla. Cr. 471, 184 P. 603; Mays v. State, supra.

And in the Miller Case, supra, this court held:

"To render statements made by a prisoner admissible, they must be entirely free and voluntary; that is, must not be abstracted by any sort of threats or violence, nor obtained by any direct or implied promises. * * *"

In the Berry Case, supra, this court said:
"Primarily there are two facts which render a confession inadmissible: First, that it was obtained under any form of compulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination; and second, that it was made under such circumstances of hope or fear as to create a fair probability of its testimonial untrustworthiness."

The holding in these cases is sound, and we have no disposition to depart from them. In the case of Mays v. State, supra, it is held that the object in admitting a confession in evidence is to obtain truth, and that a confession is to be rejected only when the circumstances under which it is given are such as have a tendency to falsehood, and the object for which it was admitted would likely be frustrated instead of being secured. Bishop's Criminal Procedure, par. 1217.

Then, if a promise is not of such a character as would likely cause a prisoner to tell an untruth through hope of profit from the promise, the confession is admissible. Wharton's Crim. Evidence, § 658. See, also, Wigmore on Evidence, par. 860.

The admonition or advice by any person to a defendant to tell the truth does not vitiate a confession, as such advice affords no reason for a false confession. 1 Wigmore on Evidence, par. 832; Mays v. State, supra.

The fact that a person making a confession does so in response to questions or that he was in jail at the time, or was not warned, does not render the statement inadmissible. Anderson v. State, supra.

A careful examination of the record leads us to the conclusion that the confession in question is not shown to have been involuntary; that there was no such promise made, either directly or impliedly, as would create any tendency to cause the defendant to tell an untruth through any hope of profit. The case was fairly tried, the issues fairly submitted, and the judgment of the trial court is affirmed.

BESSEY, P. J., and DOYLE, J., concur.